STATE OF NORTH CAROLINA v. LENWOOD EARL BUCHANAN

No. 317A89

(Filed 6 December 1991)

1. Constitutional Law § 313 (NCI4th)— first degree murder— defendant's exercise of peremptory challenges—effective assistance of counsel

   A defendant in a prosecution for armed robbery and first degree murder was not denied effective assistance of counsel where defendant was allowed to decide not to exercise peremptory challenges to remove jurors his attorneys deemed unsuitable. The record reveals that defendant and his counsel conferred regarding which venirepersons to excuse, that defense counsel gave considerable deference to defendant's informed decisions with respect to the exercise of peremptory challenges, and that on four occasions counsel acquiesced when counsel and defendant reached an impasse with respect to the excusal of a particular venireperson.

   **Am Jur 2d, Jury § 236.**

   **Adequacy of defense counsel's representation of criminal client regarding right to and incidents of jury trial. 3 ALR4th 601.**

2. Constitutional Law § 342 (NCI4th)— first degree murder— unrecorded bench conferences—federal constitutional right to be present—not violated

   Defendant's rights under the federal Constitution to be present at every stage of his trial were not violated by unrecorded bench conferences where the court did not hear evidence at any of the conferences in derogation of defendant's right to confrontation or cross-examination; it does not appear from the context that defendant's absence thwarted the fairness and justness of his trial; the conferences appear to have dealt with legal issues; no prejudice can be discerned from defendant's absence from the conferences; federal courts have treated such conferences as outside the scope of the trial for purposes of defendant's constitutional right to be present and have found waiver where, as here, defendant made no request to be present and no objection to his absence; and defendant's attorneys

were present at each of the conferences to represent and protect his interests.

**Am Jur 2d, Criminal Law § 916.**

**Exclusion or absence of defendant, pending trial of criminal case, from courtroom, or from conference between court and attorneys, during argument on question of law. 85 ALR2d 1111.**

3. **Constitutional Law § 342 (NCI4th) — first degree murder — unrecorded bench conferences — state constitutional right to be present — not violated**

Defendant's right to be present at his trial under Article I, section 23 of the North Carolina Constitution was not violated by unrecorded bench conferences where defendant failed to demonstrate, and the record did not in any way suggest, that the bench conferences implicated defendant's confrontation rights or that his presence at the conferences would have had a reasonably substantial relation to his opportunity to defend. A defendant's state constitutional right to be present at all stages of his capital trial is not violated when, with defendant present in the courtroom, the trial court conducts bench conferences, even though unrecorded, with counsel for both parties. The defendant has a constitutional right to be present if the subject matter of the conference implicates defendant's confrontation rights, or is such that the defendant's presence would have a reasonably substantial relation to his opportunity to defend, and the burden is on the defendant to show the usefulness of his presence. Once a violation of the right is apparent, the burden shifts to the State to show that it is harmless beyond a reasonable doubt.

**Am Jur 2d, Criminal Law § 916.**

**Exclusion or absence of defendant, pending trial of criminal case, from courtroom, or from conference between court and attorneys, during argument on question of law. 85 ALR2d 1111.**

4. **Criminal Law § 914 (NCI4th) — first degree murder — death sentence — polling of jury**

A first degree murder defendant was not sentenced in accordance with the requirements of N.C.G.S. § 15A-2000(b) and the case was remanded for a new sentencing proceeding where the trial court failed to poll the jury individually in

STATE v. BUCHANAN

[330 N.C. 202 (1991)]

that the court questioned the jury by having jurors raise their hands if they agreed with the verdict on each issue. Defendant was not precluded from raising the issue on appeal by his failure to request an individual poll or to object to the court's method of polling because an individual poll in capital cases is statutorily mandated and is not dependent on defendant's request or motion.

**Am Jur 2d, Criminal Law § 1016.**

**Accused's right to poll of jury. 49 ALR2d 619.**

APPEAL of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by *Allen (J.B.), J.*, at the 10 July 1989 Criminal Session of Superior Court, WAKE County, upon a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 15 October 1991.

*Lacy H. Thornburg, Attorney General, by Ralf F. Haskell, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant appellant.*

WHICHARD, Justice.

Defendant was tried on indictments charging robbery with a dangerous weapon and the first-degree murder of Jerry Coombs. The jury convicted defendant of robbery with a dangerous weapon and first-degree felony murder based on the underlying robbery, but rejected the theory of murder by premeditation and deliberation. Because the robbery was the felony underlying the felony murder conviction, the trial court arrested judgment on the robbery conviction. Following a sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended that defendant be sentenced to death. For the reasons discussed herein, we find no prejudicial error in the guilt phase of defendant's trial, but we conclude that defendant must receive a new sentencing proceeding.

The State presented the following evidence tending to show that defendant killed Jerry Coombs while robbing him in the parking lot of the Crabtree Boulevard Fast Fare in the early morning hours of 10 June 1988:

## STATE v. BUCHANAN

[330 N.C. 202 (1991)]

Melinda Coombs, the victim's wife, testified that she and her husband lived in Raleigh with their three children. In order to supplement their regular incomes, the couple acquired a daily newspaper route that required early morning deliveries to businesses along Route 1, including the Crabtree Fast Fare. Jerry Coombs made the deliveries, and Melinda handled the billing.

Melinda testified that Jerry left their house between 3:15 and 3:30 a.m. on Friday, 10 June 1988. Upon his failure to return home at the usual time, 5:30 a.m., Melinda began calling businesses along the route to determine whether Jerry had yet made deliveries. The last completed delivery was to the Crabtree Fast Fare.

Darryl Hatter, a Raleigh drywall subcontractor, testified that he stopped at the Crabtree Fast Fare at about 7:00 a.m. on 10 June 1988. After getting out of his car, Hatter noticed a man in a nearby car reclining in an awkward position. Hatter passed by the car and discovered that the man was not breathing and that there was a bloodstain where the man's hand rested near his midsection. Hatter went in the store and informed the manager, who then called the police.

The police investigation of the crime scene revealed two empty .25 caliber shell casings and an unfired shell inside the victim's car, an empty shell casing near the right front tire of the car, and a footprint impression in some nearby mud. The police also extracted a .25 caliber bullet from a bullet hole in the passenger-side door of the car. A trace evidence examination of the victim and his car produced orange-colored fibers that could have originated from the same source as fibers taken from the carpet in defendant's apartment, particles of grey foam rubber that could have originated from the same source as particles recovered from a blue running suit found in defendant's apartment, and a single hair originating from the head of a black individual (defendant is black).

Dr. Copeland's autopsy of the victim revealed two bullet wounds, one to the right knee and the other to the abdomen. The victim died as a result of bleeding from the aorta.

Anthony "Mingo" Gregg, defendant's neighbor in an apartment building at 425 Alston Street, testified that defendant said he was going to rob a man who had money bags. Defendant asked Gregg to go with him and "watch out" while defendant snatched the bags. The two men later asked Billy Cole to act as their driver.

STATE v. BUCHANAN

[330 N.C. 202 (1991)]

Gregg testified that two days before the killing the three men went to the Crabtree Fast Fare to do the robbery, but that the intended victim left too quickly. The next day, defendant showed Gregg a small black gun and told him he would use it to shoot the man in the leg if he resisted the robbery. One day later, 10 June 1988, defendant knocked on Gregg's door at about 3:30 or 4:00 a.m., saying it was time to go. The two men met Cole and drove to a spot across from the Fast Fare. Defendant and Gregg walked across the street and waited beside the dumpster near the store.

Gregg testified that when they saw the victim get out of his car, defendant put a stocking over his head, pulled out the gun, and said he was going to shoot the victim in the leg so he could not chase them. Gregg testified that when defendant pulled out the gun, he (Gregg) started leaving the scene because he and Billy Cole did not want to be involved with the gun. As Gregg was walking away he heard defendant say: "Hold it, you know what it is." Gregg then heard two gunshots. He turned and saw defendant struggling with the victim through the open car window. Gregg ran back to the victim's car and told defendant it was time to leave. Gregg testified that he heard defendant say the money was underneath the victim and he wanted it. Gregg turned again to leave and then he heard another shot when he was about halfway back to the car.

Soon both men were back at Cole's car. Defendant said he thought he had killed the man and he had gotten only the victim's wallet, which contained ten dollars and some credit cards. The men drove back to the Alston Street apartments.

Gregg told his girlfriend and his brother that defendant shot a man at the convenience store. Gregg was arrested the next week, and he gave a statement to the police. Gregg's sneakers matched the footprints left in the mud near the victim's car. Gregg pled guilty to the second-degree murder and robbery of Jerry Coombs.

Alvin Edwards, a resident of the apartment house on Alston Street, testified that defendant had spoken to him prior to the robbery about his plan to commit the crime. Edwards also testified that "Mingo" Gregg told him they had committed the robbery and defendant had shot the victim.

STATE v. BUCHANAN

[330 N.C. 202 (1991)]

Michelle McMickings, Gregg's girlfriend, testified that Gregg told her after the robbery that defendant had shot a man during the robbery. Crystal Freeman, defendant's girlfriend, testified that defendant awoke her in the early morning of 10 June 1988 and told her he thought he had killed someone. She testified that when she discovered she was missing a pair of stockings, defendant told her he had taken them.

Michael Gause testified that defendant offered to sell him a .25 caliber automatic pistol.

Defendant offered no evidence at the guilt phase of the trial, but defendant's sister, Amy Ross, testified in his behalf at the sentencing phase. Ross testified about her parents' divorce when defendant was very young. She also described defendant's educational background, work experience, and religious practices.

[1] In his first assignment of error, defendant contends that his federal and state constitutional rights to the assistance of counsel during a critical stage of his trial were violated when the trial court and defendant's attorneys allowed him to make the decision not to exercise peremptory challenges to remove jurors his attorneys deemed unsuitable. With respect to the jury selection process, the stipulated record on appeal reveals the following:

> During jury selection, defense counsel communicated to the defendant counsel's advice on whether or not each . . . venireperson passed by the state should be seated on the jury. Counsel vested in the defendant the final decision of whether to accept or peremptorily challenge each venireperson passed by the state. In each instance in which a peremptory challenge was exercised by the defense, counsel and the defendant concurred in the decision. In four instances . . . the defendant, against the advice of counsel, made the decision to accept venirepersons as seated jurors; but for counsel's conviction that the decision of who should be seated on the jury should be the capital defendant's, counsel would otherwise have peremptorily excused these four jurors.

We have rejected defendant's contention in the recent cases of *State v. Ali*, 329 N.C. 394, 407 S.E.2d 183 (1991), and *State v. McDowell*, 329 N.C. 363, 407 S.E.2d 200 (1991). In *McDowell*, the Court found no violation of defendant's right to counsel where the record revealed that "counsel and defendant were not in conflict

as to whether to pass or strike these jurors, but simply that defense counsel gave deference to his client's wishes." *Id.* at 380, 407 S.E.2d at 210. The Court held that "the trial court did not err in permitting defendant to give input into the *voir dire* decision-making process and that defendant was not denied effective assistance of counsel." *Id.* at 382, 407 S.E.2d at 210.

The Court in *McDowell* relied on the contemporaneous case of *Ali*, 329 N.C. 394, 407 S.E.2d 183. In *Ali*, the defendant claimed that "the trial court denied him his right to assistance of counsel by allowing him, rather than his lawyers, to make the final decision regarding whether Terrell would be seated as a juror." *Id.* at 402, 407 S.E.2d at 189. The Court concluded that "when counsel and a fully informed criminal defendant client reach an absolute impasse as to such tactical decisions, the client's wishes must control . . . ." *Id.* at 404, 407 S.E.2d at 189. The Court also noted that "defense counsel should make a record of the circumstances, her advice to the defendant, the reasons for the advice, the defendant's decision and the conclusion reached." *Id.*

The record here reveals that defendant and his counsel conferred regarding which venirepersons to excuse and that defense counsel gave considerable deference to defendant's informed decisions with respect to the exercise of peremptory challenges. On four occasions counsel and defendant came to an impasse with respect to the excusal of a particular venireperson, and counsel acquiesced. This issue is controlled by *Ali*; therefore, defendant's assignment of error is overruled.

[2] Defendant next contends that the trial court violated his federal and state constitutional rights by conducting bench conferences with defense counsel and counsel for the State. Though present in the courtroom, defendant asserts that his absence from these conferences violated his constitutional right to be present at every stage of the proceeding. The trial court held eighteen such conferences during the course of the trial.

Under the federal constitution defendant derives his right to be present from the Confrontation Clause of the Sixth Amendment and from the Due Process Clause of the Fifth and Fourteenth Amendments. The Confrontation Clause provides that: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. "One of the most basic of the rights guaranteed by the Confronta-

tion Clause is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338, 25 L. Ed. 2d 353, 356 (1970) (citing *Lewis v. United States*, 146 U.S. 370, 36 L. Ed. 2d 1011 (1892)). Through the Fourteenth Amendment these guarantees are required of the states as well. *Pointer v. Texas*, 380 U.S. 400, 13 L. Ed. 2d 923 (1965).

Beyond the right to presence under the Confrontation Clause, the Supreme Court

ha[s] recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him. In *Snyder v. Massachusetts*, 291 U.S. 97 (1934), the Court explained that a defendant has a due process right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge. . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.

*United States v. Gagnon*, 470 U.S. 522, 526, 84 L. Ed. 2d 486, 490 (1985) (per curiam). *See also Faretta v. California*, 422 U.S. 806, 819 n.15, 45 L. Ed. 2d 562, 572-73 n.15 (1975).

Though an accused has the constitutional right to confront witnesses and other evidence against him, and the right to a "fair and just" hearing, the federal courts have typically upheld convictions arising from trials at which the court conducted conferences, at the bench or in chambers, in the accused's absence. These courts have denied relief on a number of grounds, including that the conferences are not a stage of the accused's trial within the meaning of the Constitution, that there was a waiver of the right through lack of objection or request to be present, that there was no prejudice to the defendant resulting from the conferences, and that the bench conference is a longstanding and necessary trial practice facilitating the smooth functioning of the court.

In *Rushen v. Spain*, 464 U.S. 114, 78 L. Ed. 2d 267 (1983) (per curiam), the trial court twice spoke off the record in chambers with a seated juror regarding the juror's recollection of facts related to the trial that might affect the juror's impartiality. The trial court concluded that the juror could remain impartial, but it failed to inform defendant of the *ex parte* communications. When defense

STATE v. BUCHANAN

[330 N.C. 202 (1991)]

counsel subsequently learned of the communications, the court held a postconviction hearing regarding them. The court concluded that the *ex parte* communications lacked significance and that defendant suffered no prejudice. The Supreme Court assumed, without deciding, that the defendant's constitutional rights to presence and counsel were implicated, and held that such constitutional error was subject to harmless error analysis. *Id.* at 117-19 n.2, 78 L. Ed. 2d at 272-73 n.2. The Court concluded that the evidence produced at the postconviction hearing supported the trial court's decision that defendant suffered no prejudice. *Id.* at 120-21, 78 L. Ed. 2d at 274-75.

In *United States v. Gagnon*, 470 U.S. 522, 84 L. Ed. 2d 486, the trial court questioned a juror on the record in chambers, with defense counsel present, regarding whether defendant's actions during trial (sketching the juror's portraits while defendant was seated at counsel table) had prejudiced the juror against the defendant. In upholding the conviction, the Supreme Court stated:

> We think it clear that respondents' rights under the Fifth Amendment Due Process Clause were not violated by the *in camera* discussion with the juror. "[T]he mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. The defense has no constitutional right to be present at every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication." *Rushen v. Spain*, 464 U.S. 114, 125-26, 78 L. Ed. 2d 267, 104 S. Ct. 453 (1983) (Stevens, J., concurring in judgment).
>
> . . . .
>
> In this case the presence of the four respondents and their four trial counsel at the *in camera* discussion was not required to ensure fundamental fairness or a "reasonably substantial . . . opportunity to defend against the charge." See [*Snyder v. Massachusetts*, 291 U.S. 97, 105-06, 78 L. Ed. 674, 678]. . . . [T]he conference was not the sort of event which every defendant had a right personally to attend under the Fifth Amendment. Respondents could have done nothing

had they been at the conference, nor would they have gained anything by attending. *Id.* at 526-27, 84 L. Ed. 2d at 490.

The Court also addressed defendants' claim that their right to presence under Federal Rule of Criminal Procedure 43 was violated. The Court assumed that the Ninth Circuit Court of Appeals was correct in holding that the conference was a "stage of the trial" within the meaning of Rule 43, but it reversed the Court of Appeals on the grounds that defendants had waived their right under Rule 43 by failing to request attendance at the conference and by failing to object, before or after the conference, to their absence. *Id.* at 527-28, 84 L. Ed. 2d at 491.

Finally, in *Kentucky v. Stincer*, 482 U.S. 730, 96 L. Ed. 2d 631 (1987), the Court rejected defendant's Sixth and Fourteenth Amendment challenges to the trial court's decision to conduct a hearing on the competency of two child witnesses for the State outside the presence of defendant, but with defense counsel's participation. As to defendant's Sixth Amendment challenge, the Court emphasized the fact that no substantive testimony against defendant was received and that defendant had ample opportunity to cross-examine the witnesses when they took the stand. With respect to defendant's Fourteenth Amendment challenge, the Court concluded:

> Respondent has given no indication that his presence at the competency hearing in this case would have been useful in ensuring a more reliable determination as to whether the witnesses were competent to testify. He has presented no evidence that his relationship with the children, or his knowledge of facts regarding their background, could have assisted either his counsel or the judge in asking questions that would have resulted in a more assured determination of competency. On the record of this case, therefore, we cannot say that respondent's rights under the Due Process Clause of the Fourteenth Amendment were violated by his exclusion from the competency hearing.

*Id.* at 747, 96 L. Ed. 2d at 648.

Thus, the United States Supreme Court has addressed the question of whether defendant has a federal constitutional right to presence in terms of whether the conference at issue involves

STATE v. BUCHANAN

[330 N.C. 202 (1991)]

either the receipt of evidence without an opportunity for cross-examination or the usefulness of defendant's presence in assuring fairness in the proceeding.

Other federal courts also have been reluctant to find a violation of defendant's constitutional right to presence. In *United States v. Vasquez*, 732 F.2d 846 (11th Cir. 1984) (per curiam), the court found no violation of the Sixth Amendment where the trial court excluded defendant from the courtroom during a bench conference with counsel called to discuss the prosecuting attorney's cross-examination. The court said:

> The right to be present at every stage of trial does not confer upon the defendant the right to be present at every conference at which a matter pertinent to the case is discussed, or even at every conference with the trial judge at which a matter relative to the case is discussed. . . . [W]e conclude that a bench conference, attended by appellant's counsel and called to discuss an evidentiary matter relative to appellant's own cross-examination, is not a critical stage of the trial proceedings at which appellant has a right to be present.

*Id.* at 848-49.

In *Cox v. United States*, 309 F.2d 614 (8th Cir. 1962), the defendant claimed a violation of the Fifth and Sixth Amendments and of Federal Rule of Criminal Procedure 43. In that case, the trial court heard testimony in chambers with all counsel present, but with defendant absent. The court said:

> It is clear from reading the record that this was a conference with the attorneys and was not a part of the actual trial before the jury. . . . Such conferences are usual trial procedure.
> . . .
>
>        . . . .
>
>        . . . It is not unusual for a judge to call counsel into chambers and discuss matters of evidence, the form of questions, instructions proposed, and other matters looking to a more orderly trial, without having a defendant present. . . . This conference was not a part of the trial within the meaning of rule 43.

STATE v. BUCHANAN

[330 N.C. 202 (1991)]

> [Defendant] was not deprived of the substance of a fair trial in the holding of this conference in his absence.

*Id.* at 616.

In *United States v. Brown*, 571 F.2d 980 (6th Cir. 1978), in defendant's absence the trial court conferred with counsel regarding the excusal of prospective jurors. The court noted that its previous decisions had construed the right to be present under Rule 43 more broadly than the same right under the federal constitution. "An in-chambers conference concerning the dismissal of a juror, while a stage of the trial within the meaning of Rule 43(a) . . . is not a stage of the trial when the absence of the defendant would frustrate the fairness of the trial so long as counsel for the defendant is present." *Id.* at 987. The court found no constitutional violation and no prejudice to the defendant under Rule 43.

In *Deschenes v. United States*, 224 F.2d 688 (10th Cir. 1955), the court concluded:

> The final question is whether conferences of the court and counsel on questions of law at the bench or in chambers, out of hearing of the appellant and the jury, denied appellant his constitutional right to be present at every stage of the trial. In the first place, neither appellant nor his counsel made a specific request for appellant to be present at these conferences, and no complaint or objection was lodged to the practice. He therefore cannot complain of any possible prejudice. . . . Moreover it is settled law that the exclusion of a defendant and a jury from the courtroom during argument on a question of law does not violate defendant's constitutional right to be present at every step of the proceedings.

*Id.* at 693 (citations omitted). *See also United States v. Boone*, 759 F.2d 345, 347 (4th Cir.), *cert. denied*, 474 U.S. 861, 88 L. Ed. 2d 146 (1985); *United States v. Bascaro*, 742 F.2d 1335, 1349-50 (11th Cir. 1984); *In re Shriner*, 735 F.2d 1236, 1241 (11th Cir. 1984) ("no constitutional right to be present at the bench during conferences that involved purely legal matters"); *Egger v. United States*, 509 F.2d 745, 747-48 (9th Cir.), *cert. denied*, 423 U.S. 842, 46 L. Ed. 2d 61 (1975) ("defendant never asked to attend, nor was he prevented, he was in fact physically present throughout the trial which is all . . . the Sixth Amendment would seem to require. Any greater 'right to be present' was effectively waived by Egger's

failure to request it"); *United States v. Howell,* 514 F.2d 710, 714 (5th Cir.), *cert. denied,* 423 U.S. 914, 46 L. Ed. 2d 143 (1975); *United States v. Gregorio,* 497 F.2d 1253, 1256-60 (4th Cir.), *cert. denied,* 419 U.S. 1024, 42 L. Ed. 2d 298 (1974); *United States v. Williams,* 455 F.2d 361, 365 (9th Cir.), *cert. denied,* 409 U.S. 857, 34 L. Ed. 2d 102 (1972) (in bench conferences where defendant is in the courtroom but not present at the conference, the court is "entitled to rely on counsel's performance of his agency duties and assume appellant's absence from the bench was voluntary"); *United States v. Jorgenson,* 451 F.2d 516, 520-21 (10th Cir. 1971), *cert. denied,* 405 U.S. 922, 30 L. Ed. 2d 793 (1972); *United States v. Sinclair,* 438 F.2d 50, 52 (5th Cir. 1971); *Root v. Cunningham,* 344 F.2d 1, 3-5 (4th Cir.) (several cases cited which "found nothing wrong with the universal practice of judges and counsel discussing in conference proposed instructions out of the presence of defendants"), *cert. denied,* 382 U.S. 866, 15 L. Ed. 2d 104 (1965); *United States v. Cravatas,* 330 F. Supp. 91, 100 (D. Conn. 1971) ("Such conference [in chambers to discuss whether defendant's counsel would be admitted to practice before the court and whether the court would accept a nolo contendere plea] clearly was not a stage of the trial."); *Smith v. United States,* 277 F. Supp. 850, 860-63 (D. Md. 1967), *aff'd,* 401 F.2d 773 (4th Cir. 1968).

In the case at bar, twelve of the eighteen conferences occurred during jury selection and six occurred while the court was receiving evidence in the guilt phase of defendant's trial. Though none of the conferences are recorded, the context of the record shows that of the "jury selection" conferences, six preceded the excusal of prospective jurors by the trial court for cause with the express consent of counsel for defendant and for the State; two related to the scope of permissive questioning into a juror's views on capital punishment; and one appeared to relate to a request to have the trial court inform the prospective jurors that they should be thinking about their views on capital punishment, as they would be questioned about those views in jury selection. The content of three conferences is unclear, but the record indicates that no significant ruling resulted from any of these. With respect to each of the conferences in the evidentiary phase, it appears that the conferences related to legal arguments by counsel, motions, and administrative matters such as the timing of recesses.

In none of the conferences did the court hear evidence from witnesses in derogation of defendant's right to confrontation or

cross-examination. Neither does it appear from the context that defendant's presence would have had "a relation, reasonably substantial, to the fulness of his opportunity to defend," such that his absence thwarted the fairness and justness of his trial. *Snyder v. Massachusetts*, 291 U.S. 97, 105, 78 L. Ed. 674, 678 (1934). The conferences appear to have dealt with legal issues such as the scope of questions during voir dire of prospective jurors, the excusal of certain jurors for cause, the timing of recesses during the proceedings, and legal questions regarding the admissibility or use of certain evidence or exhibits. We can discern no prejudice from defendant's absence at these conferences.

Further, the vast weight of authority suggests that, on these facts, defendant's confrontation and due process rights under the federal Constitution were not violated by his absence from the bench conferences. Not only have federal courts treated such conferences as outside the scope of the trial for purposes of defendant's constitutional right to be present, but they also have found waiver where, as here, defendant made no request to be present and no objection to his absence. Defendant's attorneys were present at each of the conferences to represent and protect his interests. For the foregoing reasons, we conclude that defendant suffered no violation of his rights under the federal Constitution.

[3] Defendant also claims that these conferences violated his rights under Article I, Section 23, of the North Carolina Constitution. In *State v. Huff*, 325 N.C. 1, 381 S.E.2d 635 (1989), *death sentence vacated*, --- U.S. ---, 111 L. Ed. 2d 777 (1990), this Court stated:

We have interpreted th[is] state constitutional protection afforded the capital defendant as . . . guaranteeing the accused not only the right to be present at each and every stage of trial, but also providing that defendant's right to be present cannot be waived, and imposing on the trial court the duty to insure defendant's presence at trial.

*Id.* at 29, 381 S.E.2d at 651. The Court in *Huff* also held that a violation of defendant's right to presence is subject to harmless error review. *Id.* at 32-35, 381 S.E.2d at 653-55.

This Court has not ruled on whether a defendant's personal absence from a bench conference between the trial court and counsel for both parties during trial violates his constitutional right to presence. In *State v. Brown*, 306 N.C. 151, 293 S.E.2d 569 (1982),

the Court rejected defendant's claim "that he was denied due process and the effective assistance of counsel when the trial court refused to order that bench conferences be recorded." *Id.* at 173, 293 S.E.2d at 583-84. The Court did not discuss the defendant's constitutional right to presence in *Brown*.

In *State v. Robinson*, 330 N.C. 1, 409 S.E.2d 288 (1991), the Court rejected the defendant's argument that he was entitled to a new trial because the trial court conducted more than one hundred bench conferences with counsel at which defendant was not personally present. The Court reviewed the case under the harmless error standard: "After careful review of the record, we conclude that the State has met its burden by showing that defendant's absence from the conferences in this case was harmless beyond a reasonable doubt." *Id.* at 21, 409 S.E.2d at 299. Because all the bench conferences in *Robinson* were recorded, the Court had a record from which to conduct harmless error analysis. Thus, the Court did not address the precise question at issue here — whether, in a capital case with defendant present in the courtroom, bench conferences between the court and counsel violate Article I, Section 23, of the North Carolina Constitution, which guarantees the defendant's right to be present at all stages of his capital trial.

As a preliminary matter, it is not altogether apparent that a bench conference is truly a "stage" of the trial within the meaning and intent of the constitutional right to presence. Many courts, both state and federal, have taken the view that bench conferences primarily involve brief investigations into legal questions or matters of trial administration and thus are more accurately a "temporary suspension of the trial" rather than a stage of the trial itself. *See Brown v. State*, 272 Md. 450, 477, 325 A.2d 557, 571 (1974); *State v. Tumminello*, 16 Md. App. 421, 436-38, 298 A.2d 202, 210 (1972); *see also United States v. Boone*, 759 F.2d 345, 347 (4th Cir. 1985); *United States v. Brown*, 571 F.2d 980, 987 (6th Cir. 1978); *Egger v. United States*, 509 F.2d 745, 747-48 (9th Cir. 1975); *United States v. Sinclair*, 438 F.2d 50, 52 (5th Cir. 1971); *Cox v. United States*, 309 F.2d 614, 616 (8th Cir. 1962); *Wilson v. State*, 59 Wis.2d 269, 286-88, 208 N.W.2d 134, 143-44 (1973); *Palmer v. Commonwealth*, 143 Va. 592, 605-07, 130 S.E. 398, 402-03 (1925). In concluding that the conferences are not part of the actual trial, these courts often considered whether defendant's presence at the conference would have had a reasonably substantial relation to

STATE v. BUCHANAN

[330 N.C. 202 (1991)]

his opportunity to defend himself—the often-articulated test for a due process violation of the federal constitutional right to presence.

A fair reading of our cases, however, suggests a broader interpretation of the word "stage" as it relates to defendant's state constitutional right to presence at all "stages" of his trial. In *State v. Huff*, 325 N.C. 1, 381 S.E.2d 635, the Court noted:

> Although the United States Supreme Court has stated that the confrontation clause of the federal constitution guarantees each criminal defendant the fundamental right to personal presence at *all critical stages* of the trial, . . . our state constitutional right of confrontation has been interpreted as being broader in scope, guaranteeing the right of every accused to be present at *every stage* of his trial.

*Id.* at 29, 381 S.E.2d at 650-51 (emphasis in original).[1] Similarly, in *State v. Brogden*, 329 N.C. 534, 407 S.E.2d 158 (1991), the Court stated that "a defendant charged with capital murder 'has the right to be, and must be, personally present at all times in the course of his trial, when anything is done or said affecting him as to the charge against him . . . in any material respect.'" *Id.* at 541, 407 S.E.2d at 163 (quoting *State v. Kelly*, 97 N.C. 404, 405, 2 S.E. 185, 185-86 (1887)).

Under the state constitution, defendant's actual presence is required throughout his trial, not just at particularly important junctures. For example, in *State v. Payne*, 320 N.C. 138, 357 S.E.2d 612 (1987) (*Payne I*), the Court awarded a new trial due to a violation of defendant's right to presence when the trial court, during a jury recess, administered its admonitions in the jury room. Ordinarily, a time of jury recess would not be considered a stage of the trial, but it became one when the trial court addressed the jury with respect to the case in derogation of its duty " 'to see that [defendant] is actually present at *each and every step*

---

1. The broader scope of the state constitutional right to presence is illustrated by the fact that the United States Supreme Court held in *Gagnon*, 470 U.S. 522, 84 L. Ed. 2d 486, that even though the trial court conducted an *in camera* discussion with a juror, "the mere occurrence of an ex parte conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right." *Id.* at 526, 84 L. Ed. 2d at 490. *But see Johnson v. Maryland*, 915 F.2d 892 (4th Cir. 1990) (*ex parte* communication between trial judge and juror held harmless error). Under our cases such a discussion would violate the state constitutional right to presence. *See, e.g., State v. Payne*, 320 N.C. 138, 357 S.E.2d 612 (1987).

*taken* in the progress of the trial.'" *Id.* at 139, 357 S.E.2d at 612 (quoting *State v. Jenkins*, 84 N.C. 812, 814 (1881) ) (emphasis added). The Court also noted that the trial court's admonitions to the jury came at a critical stage of defendant's trial because defendant's presence at that time could have contributed to his ability to present a defense. *Id.* Thus, it appears that *Payne I* involved a federal, as well as a state, constitutional violation.

Upon Payne's second trial, the jury again sentenced him to death, and this Court again considered his claim of a violation of his right to presence. *State v. Payne*, 328 N.C. 377, 402 S.E.2d 582 (1991) (*Payne II*). In *Payne II*, before defendant arrived at court on the second day of jury selection the trial court made preliminary inquiries of a new pool of prospective jurors. The Court noted that "[to] conduct *any portion* of a capital trial in the defendant's absence deprives the defendant of the right to be present" but it ultimately concluded that the violation of defendant's constitutional rights was harmless beyond a reasonable doubt. *Id.* at 388-90, 402 S.E.2d at 588-89 (emphasis added).

Likewise, in *State v. Davis*, 325 N.C. 607, 386 S.E.2d 418 (1989), *cert. denied*, --- U.S. ---, 110 L. Ed. 2d 268 (1990), the Court treated as a "stage" of the trial the trial court's telephone conversations with a juror where defense counsel, but not defendant, was present. The Court found the error to be harmless beyond a reasonable doubt because of the presence of defense counsel and the trial court's "reiteration" of the content of the calls for the record. *Id.* at 627, 386 S.E.2d at 428. The Court also noted that, unlike in *Payne I*, though it occurred at a "stage" of defendant's trial, the conversation in *Davis* did not occur at a "critical stage" such that it bore a reasonably substantial relation to his ability to present a defense. *Id.* Thus, though for state constitutional purposes the Court assumed that the conversation came during a "stage" of defendant's trial, it did not occur at a "critical" stage for federal constitutional purposes.

Finally, in *State v. Braswell*, 312 N.C. 553, 324 S.E.2d 241 (1985), it appears that "the trial judge recessed the court in order to conduct a voir dire hearing" but that defendant was not present for the hearing. *Id.* at 558, 324 S.E.2d at 245-46. Again, though the court was in recess, this Court implicitly treated the hearing as a "stage of the trial" for purposes of reviewing defendant's assertion that his right to be present had been violated.

**STATE v. BUCHANAN**

[330 N.C. 202 (1991)]

The breadth of interpretation of what constitutes a "stage" in an accused's capital trial is not without limit, however. In *State v. Bowman*, 80 N.C. 432 (1879), the Court declined to extend a capital defendant's right to be present to include presence at the disinterment of the remains of the deceased. Neither has defendant's right to be present at all stages of his trial been extended so as to include a right to be present when the grand jury returns an indictment, *State v. Stanley*, 227 N.C. 650, 44 S.E.2d 196 (1947), when a pretrial motion for discovery is heard and defendant is represented by counsel, *State v. Davis*, 290 N.C. 511, 227 S.E.2d 97 (1976), "during the argument of a motion for a new trial and similar motions," *State v. Dry*, 152 N.C. 813, 814, 67 S.E. 1000, 1001 (1910), *overruled on other grounds*, *State v. Huff*, 325 N.C. 1, 381 S.E.2d 635, or upon appeal of asserted legal errors in the trial, *State v. Jacobs*, 107 N.C. 772, 11 S.E. 962 (1890).

The development of our cases reveals that the essential characteristic of defendant's constitutional right to presence is just that, his actual presence during trial. "This Court has repeatedly held that nothing should be done prejudicial to the rights of a person on his trial for a capital felony unless he is actually present . . . ." *State v. Jacobs*, 107 N.C. 772, 779, 11 S.E. 962, 964 (1890). " 'Defendant's presence at his trial for a capital felony . . . is a matter of public as well as private concern. Public policy requires his attendance at such a trial.' " *State v. Huff*, 325 N.C. at 30, 381 S.E.2d at 651 (quoting *State v. Moore*, 275 N.C. 198, 209, 166 S.E.2d 652, 659 (1969) ).

The first North Carolina case in which it appears that an accused asserted a violation of his right to presence was *State v. Craton*, 28 N.C. (6 Ired.) 165 (1845). In *Craton*, "the prisoner assigned as an error in the judgment that it does not appear by the record that the prisoner was personally present in court at the time of the trial and sentence passed." *Id.* at 168. Without expressly declaring that defendant had the right to be present, the Court held that there was sufficient evidence indicating that the accused was in fact present. *Id.* at 169.

In *State v. Blackwelder*, 61 N.C. (Phil. Law) 38 (1866), *overruled on other grounds*, *State v. Huff*, 325 N.C. 1, 381 S.E.2d 635, the Court noted that *Craton* did not expressly resolve the issue of whether an accused in fact had a right to be present during his trial, but it stated that "the implication in favor of the existence

of the right is so strong that we must regard it as equivalent to a positive decision." *Id.* at 39. The Court ordered a *venire de novo* because the record showed that: "Not being able to agree, the jury came into court at a late hour in the night . . . [and the trial court] 'again charged the jury in the absence of the prisoner and portion of his counsel.' " *Id.* at 39.

In *State v. Dry*, 152 N.C. 813, 67 S.E. 1000, with the trial court's permission one of two codefendants in a capital trial left the courtroom temporarily during jury selection. When the trial court realized it had mistakenly allowed a capital defendant to leave the courtroom during the trial, it inquired of counsel whether they intended to except due to the defendant's absence. Upon receiving an affirmative reply, the court ordered a mistrial. This Court treated the mistrial as entered properly, but rejected defendant's appeal of his denied motion for discharge. *See also State v. Beal*, 199 N.C. 278, 295-96, 154 S.E. 604, 614 (1930).

Within the last ten years, however, this Court has faced an increasing number of appeals involving an accused's constitutional right to presence in capital cases. Several of the recent cases involved factual situations very similar to those cases originally dealing with this constitutional right — that is, cases where the defendant himself is physically absent from the courtroom during trial proceedings.

For example, in *State v. Braswell*, 312 N.C. 553, 324 S.E.2d 241, though defense counsel was present for a voir dire hearing on the admissibility of certain testimony, the defendant was personally absent. The Court acknowledged that the defendant's right to presence was implicated, but concluded that it had been implicitly waived and that any error was not prejudicial.[2] *Id.* at 558-60, 324 S.E.2d at 245-47. In *State v. Huff*, 325 N.C. 1, 381 S.E.2d 635, defendant became so emotionally distraught upon the introduction of certain testimony that he was removed from the courtroom and the trial court allowed defense counsel's request to continue the proceeding in defendant's absence. However, the error of continuing the trial in defendant's absence was harmless because defense

---

2. Though defendant in *Braswell* was indicted for a capital offense, the State announced that it would not seek the death penalty due to a lack of any aggravating circumstance. Thus, the Court treated the case as noncapital in nature with the result that defendant's right to presence was waivable. *State v. Braswell*, 312 N.C. at 559, 324 S.E.2d at 246.

counsel was present and able to challenge the evidence being offered and the Court had a full record from which to review its admissibility. Further, there was no showing that, given his condition, defendant himself could have aided in defending against the witnesses' testimony. *Id.* at 35-36, 381 S.E.2d at 655. Likewise, in *Payne II*, 328 N.C. 377, 402 S.E.2d 582, the trial court began jury selection before defendant arrived at the courtroom. The Court concluded that this violated defendant's right to presence, but it ultimately held that the error was harmless because the available transcript showed that all the excused jurors "were either ineligible to serve or excused for manifestly unobjectionable reasons . . . ." *Id.* at 389, 402 S.E.2d at 589. The remaining jurors were still available for defendant's observation and consideration of whether he would choose to accept them.

It is clear, however, that as a practical matter not all of the proceedings in an accused's capital trial occur in the courtroom itself. Thus, in some of our recent cases we have found a violation of defendant's constitutional right to presence where the "stage of the trial" occurs not in the courtroom, but in the trial court's chambers or the jury room. For example, in *Payne I*, 320 N.C. 138, 357 S.E.2d 612, the trial court went into the jury room during a recess to give its admonitions to the jury. Neither defendant nor defense counsel was present, and there was no record of what transpired between the court and the jury; thus, the Court could not conclude that the error was harmless beyond a reasonable doubt. In *State v. Allen*, 323 N.C. 208, 372 S.E.2d 855 (1988), *death sentence vacated*, 494 U.S. 1021, 108 L. Ed. 2d 601 (1990), the trial court examined each of the jurors in chambers with respect to the possibility that a weekend newscast might have tainted his or her views on the case. Because there was a record of the examinations, however, the Court was able to conclude the error was harmless beyond a reasonable doubt. *Id.* at 222-23, 372 S.E.2d at 863-64. *See also State v. Artis*, 325 N.C. 278, 297-98, 384 S.E.2d 470, 480 (1989), *death sentence vacated*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990); *State v. Davis*, 325 N.C. 607, 626-27, 386 S.E.2d 418, 428-29.[3] *Accord State v. Brogden*, 329 N.C. 534, 540-42,

---

3. In one other similar case, *State v. Laws*, 325 N.C. 81, 381 S.E.2d 609 (1989), *death sentence vacated*, --- U.S. ---, 108 L. Ed. 2d 603 (1990), defendant argued that his right to presence was violated when the trial court allegedly talked privately with jurors. The Court concluded that "no *ex parte* 'communications' in the sense argued for by the defendant actually took place, even though they may have been invited by the trial court." *Id.* at 96-97, 381 S.E.2d at 618.

407 S.E.2d 158, 163 (charge conference in chambers with counsel, but not defendant or a court reporter held harmless error because trial court subsequently reported the proposed instructions on the record and gave opportunity to be heard).

Thus, our cases indicate that the typical situation implicating an accused's constitutional right to presence occurs when the defendant himself is not actually present in the courtroom during the course of the trial proceedings. In certain other cases, however, the *locus* of the trial proceedings is not in the courtroom, but in the jury room or in the court's chambers. We have held that defendant has a right to be present at these proceedings as well. *State v. Brogden*, 329 N.C. 534, 407 S.E.2d 158; *State v. Artis*, 325 N.C. 278, 384 S.E.2d 470; *State v. Payne*, 320 N.C. 138, 357 S.E.2d 612; *see also State v. Laws*, 325 N.C. 81, 381 S.E.2d 609; *State v. Davis*, 325 N.C. 607, 386 S.E.2d 418; *State v. Allen*, 323 N.C. 208, 372 S.E.2d 855. Notwithstanding an accused's right to be present, certain violations of this right may be harmless if such appears from the record.

It is undisputed that defendant in this case was actually, personally present in the courtroom during all the bench conferences between the trial court and counsel. Thus, there is no violation of his constitutional right to presence, at least not under the traditional line of cases interpreting that right as requiring his "actual" presence. Recently, however, we have also found a violation of defendant's constitutional right to presence during the jury selection stage of the trial on facts showing that, though the defendant and his counsel are present in the courtroom at the time, the trial court excused prospective jurors as a result of private, unrecorded conversations at the bench. *See State v. Smith*, 326 N.C. 792, 392 S.E.2d 362 (1990); *State v. McCarver*, 329 N.C. 259, 404 S.E.2d 821 (1991). The same sort of unrecorded conversations occurred in *State v. Ali*, 329 N.C. 394, 407 S.E.2d 183, but the Court found the error harmless beyond a reasonable doubt because it could determine the nature of the conversations from the trial court's explanations and the surrounding context of the record.

In these cases the fact of defendant's actual presence in the courtroom essentially was negated by the court's cloistered conversations with prospective jurors. The court's actions effectively prevented defendant's participation in the proceeding, either personally or through counsel, and they deprived him of any real

knowledge of what transpired. Further, the public interest in ensuring the appearance of fairness in capital trials was implicated by private discussions between the trial court and individual jurors which, without explanation, resulted in the excusal of jurors.

Though defendant himself did not attend the conferences in this case, we conclude that the trial court's bench conferences with defense counsel and counsel for the State did not violate defendant's state constitutional right to be present at all stages of his trial. As stated above, defendant was personally present in the courtroom during the conferences. Further, and perhaps more importantly, his actual presence was not negated by the trial court's actions. At each of the conferences defendant was represented by his attorneys. Defendant was able to observe the context of each conference and inquire of his attorneys at any time regarding its substance. Through his attorneys defendant had constructive knowledge of all that transpired. Following the conferences defense counsel had the opportunity and the responsibility to raise for the record any matters to which defendant took exception. At all times defendant had a first-hand source of information as to the matters discussed during a conference. It also is relevant that bench conferences typically concern legal matters with which an accused is likely unfamiliar and incapable of rendering meaningful assistance. Other conferences typically deal with administrative matters that are nonprejudicial to the fairness of defendant's trial. In addition, such conferences do not diminish the public interest associated with defendant's right to presence. Unlike the excusal of prospective jurors following *ex parte* communications, in this case defendant, through his attorneys, had every opportunity to inform the court of his position and to contest any action the court might have taken.

For the foregoing reasons, we hold that a defendant's state constitutional right to be present at all stages of his capital trial is not violated when, with defendant present in the courtroom, the trial court conducts bench conferences, even though unrecorded, with counsel for both parties. *See People v. Boraders*, 33 Mich. App. 340, 189 N.W.2d 837 (1971); *People v. Gillette*, 171 Cal. App. 2d 497, 341 P.2d 398 (1959), *cert. denied*, 363 U.S. 846, 4 L. Ed. 2d 1729 (1960); *People v. Baker*, 164 Cal. App. 2d 99, 330 P.2d 240 (1958), *cert. denied*, 359 U.S. 956, 3 L. Ed. 2d 763 (1959); *see generally* 3 Joseph G. Cook, *Constitutional Rights of the Accused* § 18:7, at 128-29 nn.2-3 (2d ed. 1986). If, however, the subject matter

of the conference implicates the defendant's confrontation rights, or is such that the defendant's presence would have a reasonably substantial relation to his opportunity to defend, the defendant would have a constitutional right to be present. *See United States v. Gagnon*, 470 U.S. at 536, 84 L. Ed. 2d at 490. The burden is on the defendant to show the usefulness of his presence in order to prove a violation of his right to presence. *See Kentucky v. Stincer*, 482 U.S. at 747, 96 L. Ed. 2d at 648. Once a violation of the right is apparent, the burden shifts to the State to show that it is harmless beyond a reasonable doubt. *State v. Huff*, 325 N.C. at 32-35, 381 S.E.2d at 653-55.

Defendant has failed to demonstrate, and the record does not in any way suggest, that the bench conferences here implicated defendant's confrontation rights or that his presence at the conferences would have had a reasonably substantial relation to his opportunity to defend. This assignment of error is thus overruled.

By his next assignment of error, defendant contends that his death sentence cannot be upheld because the trial court erroneously allowed the prosecutor to excuse a juror who was qualified to serve. Because we conclude that defendant is entitled to a new capital sentencing proceeding for reasons explained hereafter, we need not address this issue.

[4]   Defendant contends he is entitled to a new capital sentencing proceeding because the trial court failed to comply with the statutory mandate for an individual poll of jurors upon the return of a death sentence. N.C.G.S. § 15A-2000(b) provides, in pertinent part:

> (b) Sentence Recommendation by the Jury.— The sentence recommendation must be agreed upon by a unanimous vote of the 12 jurors. Upon delivery of the sentence recommendation by the foreman of the jury, the jury shall be individually polled to establish whether each juror concurs and agrees to the sentence recommendation returned.

N.C.G.S. § 15A-2000(b) (1988).

The record of defendant's capital sentencing proceeding reveals that when the jury returned to the courtroom with its verdict, the trial court verified that the jury had reached a verdict and then directed the clerk to "take the verdict or the recommendation of the jury." The clerk read from the sentencing issues sheet the jury's findings of an aggravating circumstance, its rejection of all

**STATE v. BUCHANAN**

[330 N.C. 202 (1991)]

mitigating circumstances, its finding that the aggravating circumstance was sufficiently substantial to warrant the death penalty, and its recommendation of the death penalty. The clerk concluded by asking the jury, "This is your recommendation, so say you all?" The transcript then states, "JURORS RESPOND IN THE AFFIRMATIVE." With respect to each of the queries on the issues and recommendation sheet the trial court then inquired of the jury foreman whether the jury's written response was accurate. The foreman verified each response. The trial court then polled the jury as follows:

COURT: As to the other members of the jury, listen to this. I'm going to ask that you raise your hand if this is your answer to these issues and recommendations.

Your foreman has answered issue number one, do you unanimously find from the evidence, and beyond a reasonable doubt, the existence of the one following aggravating circumstance? He has answered that "Yes." If that is your verdict, all twelve of you raise your right hand.

Let the record show that all twelve members of the jury raised their hand.

The trial court followed the procedure described above for each of the sentencing issues and the jury's sentencing recommendation. Thus, the record affirmatively shows that the trial court, in questioning the jury collectively and having all members of the jury respond collectively, failed to meet the statutory mandate that the jury be polled *individually*.

Even before the statutory requirement of individual polling of the jury in capital cases, under North Carolina law a group inquiry of the jury was insufficient to satisfy a defendant's request for an individual poll. In *State v. Boger*, 202 N.C. 702, 163 S.E. 877 (1932), the defendant was tried for murder and convicted of manslaughter. Defense counsel requested the court to poll the jurors. The court then addressed the jury as follows: "All of you gentlemen of the jury who return a verdict of guilty of manslaughter, stand up." *Id.* at 703, 163 S.E. at 877. After all the jurors stood, defense counsel unsuccessfully requested the court to poll the jury "man for man." *Id.* In ordering a new trial, the Court said:

In the instant case, the defendant was denied his right to have the jurors polled by the judge or under his direction. The request of the judge that all the jurors who returned

STATE v. BUCHANAN

[330 N.C. 202ʹ (1991)]

a verdict of guilty of manslaughter in this case, stand up, was not a compliance with the demand of the defendant, made in apt time, that the jurors be polled, man for man. The defendant was entitled as a matter of right to know whether each juror assented to the verdict announced by the juror who undertook to answer for the jury, and to that end he had the right to insist that a specific question be addressed to and answered by each juror in open court, as to whether he assented to said verdict. To poll the jury means to ascertain by questions addressed to the jurors, individually, whether each juror assented and still assents to the verdict tendered to the court.

*Id.* at 704, 163 S.E. at 878. The trial court's direction to all the jurors in this case to signal agreement to the verdict by raising their right hand does no more to satisfy the statutory requirement of individual polling than did the "all stand" direction of the court following the defendant's request for polling in *Boger.*

The State argues that because defendant failed to request an individual poll and to object to the court's method of polling, he is precluded from raising the error on appeal. N.C.R. App. P. 10(b); N.C.G.S. § 15A-1446(d) (1988). It is true that the statutory right to a jury poll in a noncapital case may be waived. N.C.G.S. § 15A-1238 (1988); *State v. Black,* 328 N.C. 191, 197-98, 400 S.E.2d 398, 402-03 (1991). However, the right to a noncapital jury poll under N.C.G.S. § 15A-1238 arises "[u]pon the motion of any party . . . [and the poll] *may* be conducted by the judge or by the clerk by asking each juror individually whether the verdict announced is his verdict." N.C.G.S. § 15A-1238 (emphasis added). In contrast, the right to a jury poll in a capital case is not dependent upon the motion of a party. "Upon delivery of the sentence recommendation by the foreman of the jury, the jury *shall be individually polled* . . . ." N.C.G.S. § 15A-2000(b) (emphasis added). Clearly, in capital cases an individual jury poll is statutorily mandated and is not dependent upon defendant's request or motion. "When a trial court acts contrary to a statutory *mandate,* the error ordinarily is not waived by the defendant's failure to object at trial." *State v. Hucks,* 323 N.C. 574, 579, 374 S.E.2d 240, 244 (1988); *see also State v. Ashe,* 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985).

Defendant thus was not sentenced in accordance with the requirements of N.C.G.S. § 15A-2000(b), in that the trial court failed

to poll the jury individually. For that reason, he is entitled to a new sentencing proceeding. Accordingly, we need not address the remaining sentencing phase assignments of error.

For the reasons stated, we find no error in the guilt phase of defendant's capital trial, but remand for a new capital sentencing proceeding.

Guilt phase: No error.

Sentencing phase: New sentencing proceeding.