STATE OF NORTH CAROLINA v. MILTON RAY JONES

No. 357A95

(Filed 24 July 1997)

1. **Constitutional Law § 344.1 (NCI4th)— first-degree murder—defendant's right to be present—note from judge to juror**

There was no prejudicial error in a capital prosecution for first-degree murder where, during defendant's cross-examination of a prosecution witness, the trial court interrupted defense counsel to have the bailiff deliver a note to an alternate juror; the court said, "She is right here in the courthouse. If you have keys, you can deliver your keys up, sir"; and the court also told the alternate that he could talk to his fellow jurors about the note. The trial court negated the defendant's presence in the courtroom by passing the note to the alternate juror without revealing the contents to defendant or his counsel but the transcript reflects the benign substance of the communication between the court and the juror. The trial court's instruction that the juror was free to discuss the note with his fellow jurors was particularly significant.

**Am Jur 2d, Criminal Law § 692; Trial §§ 1573, 1579.**

**Communication between court officials or attendants and jurors in criminal trial as ground for mistrial or reversal—post-*Parker* cases. 35 ALR4th 890.**

2. **Constitutional Law § 344.1 (NCI4th)— first-degree murder—defendant's right to be present—paper handed from bench to counsel**

The right of a defendant to be present at his capital prosecution for first-degree murder was not violated where, following the guilt-innocence charge conference, the court asked the attorneys to step to the bench to be handed a sheet of paper. No comments were made at the bench, the contents of the paper provided to counsel were not revealed, defendant was actually present in the courtroom and was able to inquire of his counsel regarding the substance of the paper, defendant had constructive knowledge through his counsel of the substance of the paper, and defendant was not excluded from any private conversations between the court, the prosecutor, and defendant's counsel. Defendant's presence was not negated by the court's actions.

STATE v. JONES

[346 N.C. 704 (1997)]

**Am Jur 2d, Criminal Law §§ 692, 695.**

3. **Evidence and Witnesses § 1776 (NCI4th)— first-degree murder—time period in which murder occurred—demonstration by prosecutor**

The trial court did not err in a capital prosecution for first-degree murder by overruling defendant's objection to a demonstration by the prosecutor during guilt-innocence closing arguments where an expert witness had testified that the victim would have lost consciousness between two and five minutes after receiving the fatal knife wounds and the prosecutor silently timed five minutes, then argued that five minutes was a long time to be slashed, cut, and stabbed; that the victim had up to five minutes to experience the pain of being stabbed thirty-one times; that the victim had the experience of seeing her own blood; and asked the jury to consider what the victim was thinking during the five-minute period. The evidence presented at trial permitted the prosecutor to argue that defendant pursued, stabbed, and slashed the victim during the five-minute period after defendant inflicted the fatal wounds, the demonstration was designed to give the jury a better grasp of what occurred during this period, and the demonstration was proper.

**Am Jur 2d, Evidence §§ 996, 997, 1005; Trial § 566.**

4. **Criminal Law § 454 (NCI4th Rev.)— capital murder—prosecutor's argument—victim's thoughts—not grossly improper**

An argument by a prosecutor in a capital prosecution for first-degree murder that described what the victim may have seen and felt and asked the jury to speculate about what the victim may have been thinking was not so grossly improper as to require the trial court to intervene *ex mero motu*. The description of what the victim may have seen and felt was based upon the evidence presented at trial and the comments with respect to what the victim may have been thinking as she died were similar to the prosecutor's remarks in *State v. King*, 299 N.C. 707.

**Am Jur 2d, Trial §§ 554, 664, 665.**

**Supreme Court's views as to what courtroom statements made by prosecuting attorney during criminal trial violate due process or constitute denial of fair trial. 40 L. Ed. 2d 886.**

**5. Homicide § 493 (NCI4th)— capital murder—instructions— lack of provocation by victim**

The trial court did not err in a capital prosecution for first-degree murder by instructing the jury that it could consider the lack of provocation by the victim in determining whether defendant acted with premeditation and deliberation. The instruction was not biased in favor of the State's position.

**Am Jur 2d, Homicide §§ 498, 501; Trial § 1165.**

**Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.**

**6. Criminal Law § 1382 (NCI4th Rev.)— capital sentencing— no significant history of prior criminal activity—not submitted—error**

The trial court erred in a capital sentencing proceeding by not submitting the statutory mitigating circumstance that defendant had no significant history of prior criminal activity where the evidence tended to show that defendant had pled guilty to four counts of misdemeanor larceny for stealing money and merchandise from his employer over a period of four or five years; had pled guilty to two or three felony counts for stealing jewelry left in a room by a guest in the motel in which defendant worked; was sentenced to probation and ordered to pay restitution in connection with both the felony and misdemeanor counts; there was evidence that defendant had smoked marijuana since the seventh or eighth grade and had used cocaine since 1988; and no evidence presented at trial suggested that defendant had committed any violent crimes prior to the killing of the victim. Defendant's prior convictions consisted solely of property crimes, there was no evidence that defendant had engaged in any prior violent criminal activity, defendant did not receive an active prison sentence for any of those convictions, and, given the number, age, and nature of defendant's prior criminal activities, a rational juror could have concluded that defendant had no significant history of prior criminal activity. The submission of the nonstatutory mitigating circumstance that defendant had no prior criminal convictions or criminal history for violent criminal behavior did not render the error harmless beyond a reasonable doubt because the jury was not required to give mitigating value to the circumstance. Defendant's criminal history was submitted to the jury, but the

jury was not allowed to consider whether this history was significant under the statutory (f)(1) circumstance.

**Am Jur 2d, Criminal Law §§ 598, 599; Homicide § 554.**

**Court's right, in imposing sentence, to hear evidence of, or to consider, other offenses committed by defendant. 96 ALR2d 768.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Strickland, J., at the 24 July 1995 Criminal Session of Superior Court, Onslow County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 18 March 1997.

*Michael F. Easley, Attorney General, by William B. Crumpler, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Benjamin Sendor, Assistant Appellate Defender, for defendant-appellant.*

PARKER, Justice.

Defendant was indicted 26 April 1994 for one count of first-degree murder. In July 1995 he was tried capitally and found guilty of first-degree murder. Following a capital sentencing proceeding, the jury recommended a sentence of death; and the trial court entered judgment accordingly. We find no error meriting reversal of defendant's conviction. However, for the reason stated herein, we conclude that defendant is entitled to a new capital sentencing proceeding.

On the evening of Wednesday, 15 December 1993, defendant killed Sherry Koonce, his wife's sister. The State's evidence tended to show that defendant's marriage was failing and that defendant placed some of the blame on the victim. Prior to the murder defendant told co-workers that he and his wife were having marital problems and that he had thought about killing himself, his wife, and other family members. On a number of occasions defendant told friends or co-workers that he was going to kill the victim.

At approximately 9:00 or 9:30 p.m. on 15 December, defendant went to the victim's home, ostensibly to tell her that her husband had been unfaithful. A violent altercation ensued during which defendant stabbed and slashed the victim thirty-one times. Blood was discovered in the living room; in the kitchen; and on the front door, the front

steps, and the front doorknob. Two of the three knives found at the scene were found in the kitchen, and a third knife was found under the victim's body in the living room. The physical evidence at the scene permits the inference that defendant initially attacked the victim in the kitchen, that the victim attempted to flee out the front door, that defendant forced her back inside, and that defendant inflicted the final wounds in the living room.

Dr. John Almeida, Jr., who performed the autopsy, identified three potentially fatal wounds to the central chest and back of the victim's body. Almeida concluded that the victim bled to death as a result of these wounds. He opined that the victim probably lost consciousness between two and five minutes after the fatal wounds were incurred.

On 17 December defendant made a statement to the police in which he admitted that he had killed the victim. At trial defendant testified that he did not have a knife when he entered the victim's home and that he had not planned to hurt the victim. Defendant's testimony tended to show the following. When he told the victim that her husband had been unfaithful, the victim became angry, told defendant that he was lying, and "smacked" him in the face and kicked his shin. The victim then told defendant that she was going to get a shotgun and kill him. When defendant responded by preventing the victim from going to her bedroom, the victim slapped him and kicked him in the groin. The victim subsequently ran into the kitchen, retrieved a knife, and said that she was going to kill defendant. As they struggled defendant took the knife from the victim and stabbed her three times in the stomach. Defendant dropped the knife and walked to the front door. At this point the victim obtained a second knife and again threatened to kill defendant. Defendant took this knife away from the victim and, at this point, "lost control."

Additional facts will be presented as needed to discuss specific issues.

## GUILT-INNOCENCE PHASE

[1] By his first assignment of error, defendant contends that the trial court violated his right to be present at every stage of the trial by passing a note to an alternate juror without disclosing to defendant or his counsel the contents of the note. We hold that the error was harmless beyond a reasonable doubt.

The Confrontation Clause in Article I, Section 23 of the North Carolina Constitution "guarantees an accused the right to be

**STATE v. JONES**

[346 N.C. 704 (1997)]

present in person at every stage of his trial." *State v. Payne*, 320 N.C. 138, 139, 357 S.E.2d 612, 612 (1987). "This right to be present extends to all times during the trial when anything is said or done which materially affects defendant as to the charge against him." *State v. Chapman*, 342 N.C. 330, 337-38, 464 S.E.2d 661, 665 (1995), *cert. denied*, —— U.S. ——, 135 L. Ed. 2d 1077 (1996). A defendant's right to be present during all stages of his capital trial is a nonwaivable right, *Payne*, 320 N.C. at 139, 357 S.E.2d at 612, and we have imposed a duty upon the trial court to insure a defendant's presence throughout the trial, *id.* The violation of this right is subject to a harmless error beyond a reasonable doubt standard of review.

*State v. Workman*, 344 N.C. 482, 497, 476 S.E.2d 301, 309 (1996).

During defendant's cross-examination of a prosecution witness, the trial court interrupted defense counsel to deliver a message to alternate juror Clifford Burt:

THE COURT: Just one moment. Let me deliver this message to Mr. Burt. Mr. Bailiff? And he can accommodate you right here without any comment.

(NOTE PASSED TO MR. BURT—ONE OF THE JURORS)

THE COURT: She is right here in the courthouse. If you have keys, you can deliver your keys up, sir. Mr. Burt, you are free to talk to your fellow jurors about that note if you want to—if you'd like to, sir.

All right. You may continue, Mr. Medlin.

While defendant was present in the courtroom when the court passed the note to the alternate juror, the court did not disclose the contents of the note to defendant or defendant's counsel. The "trial court errs when it communicates with a juror in the absence of the defendant." *State v. Williams*, 343 N.C. 345, 361, 471 S.E.2d 379, 387 (1996), *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 618 (1997). A defendant's actual presence in the courtroom can be "negated by the court's cloistered conversations" with jurors or prospective jurors. *State v. Buchanan*, 330 N.C. 202, 222, 410 S.E.2d 832, 844 (1991). Such actions may prevent the defendant from participating in the proceeding, either personally or through counsel; and they deprive the defendant of "any real knowledge of what transpired." *Id.* at 222-23, 410 S.E.2d

at 844. In the present case we conclude that when the trial court during the presentation of evidence passed a note to an alternate juror without revealing the contents of the note to defendant or his counsel, this action negated defendant's presence in the courtroom and constituted a violation of his right to be present at all stages of his capital trial.

Once a violation of the right to be present is apparent, the State then has the burden to show that the violation was harmless beyond a reasonable doubt. *State v. Meyer*, 345 N.C. 619, 623, 481 S.E.2d 649, 651-52 (1997). "The State may show that the error was harmless beyond a reasonable doubt where the transcript reveals the substance of the trial court's conversation with the juror, or where the trial judge reconstructs the substance of the conversation on the record." *State v. Lee*, 335 N.C. 244, 262, 439 S.E.2d 547, 555, *cert. denied*, 513 U.S. 891, 130 L. Ed. 2d 162 (1994).

In this case the transcript "reflects the benign substance" of the communication between the court and the juror. *State v. Artis*, 325 N.C. 278, 297, 384 S.E.2d 470, 480 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). After giving the juror the note, the trial court told the juror that "[s]he is right here in the courthouse"; that "you can deliver your keys up, sir"; and that "you are free to talk to your fellow jurors about that note if you want to." From this record we are able to conclude that the message delivered to the juror did not relate in any way to defendant's trial. Particularly significant was the trial court's instruction to the alternate juror that he was free to discuss the note with his fellow jurors. Throughout the trial the court instructed the jurors not to discuss the case. The fact that the court in the presence of defendant and defendant's counsel gave the jurors permission to discuss the note strongly suggests that it was unrelated to the case. Accordingly, we conclude that the error is harmless beyond a reasonable doubt. This assignment of error is overruled.

[2] By his next assignment of error, defendant contends that the trial court violated his right to presence by engaging in a private communication with the attorneys at the bench without defendant being present. The record shows that the following occurred after the guilt-innocence phase charge conference:

THE COURT: Without my making any comments, I will ask the attorneys to step up to the bench to be handed a sheet of paper.

**STATE v. JONES**

[346 N.C. 704 (1997)]

(*Counsel approach bench with no comments being made.[ )*]

THE COURT: You may be seated. All right. All right, Mr. Bailiff, let's take us a recess until 9:15 tomorrow morning.

(RECESS TAKEN UNTIL AUGUST 10, 1995)

The record does not reveal the substance of the paper which was provided to counsel.

A defendant's constitutional right "to be present at all stages of his capital trial is not violated when, with defendant present in the courtroom, the trial court conducts bench conferences, even though unrecorded, with counsel for both parties." *Buchanan,* 330 N.C. at 223, 410 S.E.2d at 845; *accord State v. Speller,* 345 N.C. 600, 605, 481 S.E.2d 284, 286 (1997). The record in this case shows that defendant was actually present in the courtroom when counsel approached the bench. For this reason he was able to inquire of his counsel regarding the substance of the paper. *See Buchanan,* 330 N.C. at 222-23, 410 S.E.2d at 844-45. Defendant had constructive knowledge through his counsel of the substance of the paper. *See id.* No comments were made at the bench; and defendant was not excluded from any private conversations between the court, the prosecutor, and defendant's counsel. Thus, defendant's "actual presence was not negated by the trial court's actions." *Id.* at 223, 410 S.E.2d at 844. Under these circumstances we conclude that defendant's constitutional right to be present was not violated. This assignment of error is overruled.

**[3]** Defendant next contends that the trial court erred by overruling his objection to a demonstration by the prosecutor during the guilt-innocence phase closing arguments. At trial a prosecution expert witness testified that the victim would have lost consciousness between two and five minutes after receiving the fatal knife wounds. During his guilt-innocence phase closing argument, prosecutor Ernest R. Lee silently timed five minutes to demonstrate the length of this period of time.

> Now, what is 5 minutes? Well, Ladies and Gentlemen of the Jury, for the next 5 minutes, we're going [to] sit here. We're going [to] let you see how long 5 minutes really is. We're going [to] let you see how long the victim was in the presence of this defendant as he cut, slashed, and stabbed and pursued her around that residence.

[DEFENSE COUNSEL]: Your Honor, I object for the record.

THE COURT: Overruled.

([THE PROSECUTOR] IS TIMING 5 MINUTES AND THERE'S NO TALKING GOING ON DURING THAT TIME)

After silently timing five minutes, the prosecutor argued that five minutes was a long time to be slashed, cut, and stabbed; that the victim had up to five minutes to experience the pain of being stabbed thirty-one times; and that the victim had the experience of seeing her own blood. The prosecutor also asked the jury to consider what the victim was thinking about during the five-minute period:

> Was she thinking about her mother at that time? Was she thinking about her father? Was she thinking about her sisters? Was she thinking about those children she played with earlier that evening? What was she thinking about those five minutes while he's doing these horrible things to her?

Defendant neither objected nor assigned error to the arguments which followed the prosecutor's demonstration. Defendant assigned error only to the court's overruling his objection to the demonstration.

"A prosecutor in a capital trial is entitled to argue all the facts submitted into evidence as well as any reasonable inferences therefrom." *State v. Gregory*, 340 N.C. 365, 424, 459 S.E.2d 638, 672 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 478 (1996). "Counsel are afforded wide latitude in arguing hotly contested cases, and the scope of this latitude lies within the sound discretion of the trial court." *Id.* "Prosecutors may create a scenario of the crime committed as long as the record contains sufficient evidence from which the scenario is reasonably inferable." *State v. Bishop*, 343 N.C. 518, 543, 472 S.E.2d 842, 855 (1996), *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 723 (1997).

In the present case the State's evidence tended to show that defendant stabbed and slashed the victim thirty-one times. Blood was discovered in the living room; in the kitchen; and on the front door, the front steps, and the front doorknob. Two of the three knives found at the scene were found in the kitchen, and a third knife was found under the victim's body in the living room. The physical evidence at the scene permits the inference that defendant initially attacked the victim in the kitchen, where a significant amount of blood was found; that the victim attempted to flee out the front door;

that defendant forced her back inside; and that defendant inflicted the final wounds in the living room. Dr. Almeida, the State's pathologist, testified that three of the thirty-one stab and slash wounds were potentially fatal and that the victim would have lost consciousness between two and five minutes after these wounds were inflicted. Almeida further testified that he could not determine when the non-fatal wounds had been inflicted in relation to the infliction of the fatal wounds. The evidence presented at trial permitted the prosecutor to argue that defendant pursued, stabbed, and slashed the victim during the five-minute period after defendant inflicted the fatal wounds. We conclude that the prosecutor's demonstration was designed to give the jury a better grasp of what occurred during this period of time. The demonstration was proper, and defendant's argument that the demonstration unfairly prejudiced him has no merit.

[4] Defendant also contends that the prosecutor improperly asked the jury to speculate about what the victim may have been thinking and feeling during the five-minute period of time which was the subject of the prosecutor's demonstration. Defendant neither objected nor assigned error in the record on appeal to the comments made by the prosecutor. Rule 10(a) of the Rules of Appellate Procedure provides, in pertinent part:

> Except as otherwise provided herein, the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule 10.

N.C. R. App. P. 10(a). By failing to assign error in the record on appeal, defendant waived appellate review of his contentions with respect to the substance of the prosecutor's arguments. *See State v. Elliott*, 344 N.C. 242, 277, 475 S.E.2d 202, 218 (1996), *cert. denied,* —— U.S. ——, 137 L. Ed. 2d 312 (1997). Nevertheless, pursuant to our discretion under Rule 2 of the Rules of Appellate Procedure, we review the prosecutor's comments for gross impropriety.

We have previously reviewed closing arguments which suggested what a victim may have been thinking as he or she was dying. *See id.* at 274-75, 475 S.E.2d at 216-17; *State v. Hunt*, 339 N.C. 622, 651-52, 457 S.E.2d 276, 293-94 (1994); *State v. King*, 299 N.C. 707, 711-13, 264 S.E.2d 40, 43-44 (1980). In each of these cases we concluded that the arguments at issue were not grossly improper. In *King* we reviewed an argument similar to the argument in the present case:

[W]hat did he think of as he lay there dying and the blood rolling out of his neck on the dirt road, did he think about his mother that he lived with and cared for? Did he think will the roses bloom in Heaven, are there any gardens there? Will the branches bloom with blossoms and in winters fill with snow? Will the roses bloom in Heaven, tell me mother ere I go. Did he think of his brothers and sisters when he knew that his life was sputtering from his neck that he would never see again. Did he think of them?

*King*, 299 N.C. at 711-12, 264 S.E.2d at 43-44. The *King* Court concluded that the argument did not require any action from the trial court to correct any gross improprieties. *Id.* at 713, 264 S.E.2d at 44.

In the present case the prosecutor described what the victim may have seen and felt as she was being stabbed to death and asked the jury to speculate about what the victim may have been thinking during this time period. The prosecutor's description of what the victim may have seen and felt was based upon the evidence presented at trial. The prosecutor's comments with respect to what the victim may have been thinking as she died were similar to the prosecutor's remarks in *King*; as in *King*, we conclude that the prosecutor's argument was not so grossly improper as to require the trial court to intervene *ex mero motu*. This assignment of error is overruled.

**[5]** Defendant next contends that the trial court erred by giving the following instruction:

Neither premeditation nor deliberation are usually susceptible of direct proof. They may be proved by circumstances from which they may be inferred; such as, lack of provocation by the victim; conduct of the defendant before, during, and after the killing; threats and declarations of the defendant; use of grossly excessive force; infliction of lethal wounds after the victim is felled; brutal or vicious circumstances of the killing; and manner in which or the means by which the killing was done.

Defendant argues that the court erred by instructing the jury that it could consider the lack of provocation by the victim in determining whether defendant acted with premeditation and deliberation. He suggests that the court's instruction was biased in favor of the State's position that defendant killed the victim without provocation. Defendant recognizes that this Court has ruled against his position. *See Elliott*, 344 N.C. at 270-71, 475 S.E.2d at 214; *State v. Leach*, 340

N.C. 236, 241-42, 456 S.E.2d 785, 788-89 (1995). In *Leach* this Court found no error in a jury instruction that is virtually identical to the instruction given by the trial court in this case. *Leach*, 340 N.C. at 241, 456 S.E.2d at 788. We said: "The instruction in question informs a jury that the circumstances given are only illustrative; they are merely examples of some circumstances which, if shown to exist, permit premeditation and deliberation to be inferred." *Id.* at 241, 456 S.E.2d at 789. We conclude that the instruction in this case was not biased in favor of the State's position. This assignment of error is overruled.

## SENTENCING PROCEEDING

[6] Defendant brings forth several issues for review with respect to his capital sentencing proceeding, but we need focus only on defendant's contention that the trial court erroneously failed to submit the statutory mitigating circumstance that defendant had no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1) (Supp. 1996).

During the sentencing proceeding jury charge conference, defendant argued against the submission of the (f)(1) mitigating circumstance. Defendant now asserts that the trial court should have submitted the (f)(1) mitigating circumstance because the evidence would permit a rational juror to find that defendant did not have a significant history of prior criminal acts. Defendant's opposition at trial to the submission of the (f)(1) mitigating circumstance does not concern us here.

> A "trial court has no discretion as to whether to submit statutory mitigating circumstances when evidence is presented in a capital case which may support a statutory circumstance." *State v. Skipper*, 337 N.C. 1, 44, 446 S.E.2d 252, 276 (1994), *cert. denied*, 513 U.S. 1134, [130] L. Ed. 2d 895 (1995). The trial court must submit the circumstance if it is supported by substantial evidence. The trial court is required "to determine whether a rational jury could conclude that defendant had no *significant* history of prior criminal activity." *State v. Wilson*, 322 N.C. 117, 143, 367 S.E.2d 589, 604 (1988) (emphasis added).

*State v. McCarver*, 341 N.C. 364, 398-99, 462 S.E.2d 25, 44-45 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 482 (1996). The activity is significant if it is "likely to have influence or effect upon the determination by the jury of its recommended sentence." *State v. Walls*, 342 N.C. 1, 56, 463 S.E.2d 738, 767 (1995), *cert. denied*, —— U.S. ——, 134

L. Ed. 2d 794 (1996). "When the trial court is deciding whether a rational juror could reasonably find this mitigating circumstance to exist, the nature and age of the prior criminal activities are important, and the mere number of criminal activities is not dispositive." *State v. Geddie*, 345 N.C. 73, 102, 478 S.E.2d 146, 161 (1996).

In the present case the evidence tended to show that defendant in 1988 pled guilty to four counts of misdemeanor larceny for stealing money and merchandise from his employer over a period of four or five years. In 1993 defendant pled guilty to two or three felony counts for stealing jewelry left in a room by a guest in the motel in which defendant worked. Defendant was sentenced to probation and ordered to pay restitution in connection with both the misdemeanor and felony convictions listed above. In addition to the crimes for which defendant had been convicted, the evidence at trial tended to show that he had smoked marijuana since the seventh or eighth grade and that he had used cocaine since 1988. No evidence presented at trial suggested that defendant had committed any violent crimes prior to the killing of the victim.

We have previously held that similar histories permitted a rational juror to find "no significant history of prior criminal activity" as a mitigating circumstance. *See State v. Ball*, 344 N.C. 290, 310-11, 474 S.E.2d 345, 357 (1996) (the defendant had a history of drug use, a 1980 conviction for robbery, a 1991 conviction for felonious assault, and three convictions for forgery), *cert. denied*, —— U.S. ——, 137 L. Ed. 2d 561 (1997); *State v. Rowsey*, 343 N.C. 603, 619-20, 472 S.E.2d 903, 911-12 (1996) (the defendant had been convicted of two counts of larceny seven months before the shooting, fifteen counts of injury to property less than two years before the shooting, and an alcoholic beverage violation less than two years before the shooting; had been charged with five counts of felony breaking and entering and felony larceny offenses at the time of trial; and had illegally possessed marijuana and a concealed weapon prior to the shooting), *cert. denied*, —— U.S. ——, 137 L. Ed. 2d 221 (1997); *State v. Buckner*, 342 N.C. 198, 234, 464 S.E.2d 414, 434-35 (1995) (the defendant had seven breaking and entering convictions, a common-law robbery conviction, and a drug-trafficking conviction), *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 47 (1996); *State v. Lloyd*, 321 N.C. 301, 313, 364 S.E.2d 316, 324 (the defendant had two felony convictions and seven alcohol-related misdemeanor convictions), *sentence vacated on other grounds*, 488 U.S. 807, 102 L. Ed. 2d 18 (1988).

**STATE v. JONES**

[346 N.C. 704 (1997)]

In this case defendant's prior convictions consisted solely of property crimes, and there was no evidence that defendant had engaged in any prior violent criminal activity. While defendant's prior convictions were relatively recent, defendant did not receive an active prison sentence for any of those convictions; rather, he was placed on probation and ordered to pay restitution. *Cf. Ball*, 344 N.C. at 310-11, 474 S.E.2d at 357 (the defendant had been given a suspended sentence for a prior felonious assault conviction); *Buckner*, 342 N.C. at 234, 464 S.E.2d at 435 (the defendant had received probation and a suspended sentence for his prior convictions). Given the number, age, and nature of defendant's prior criminal activities, we conclude that a rational juror could have concluded that defendant had no significant history of prior criminal activity. For this reason the trial court erred by failing to submit the (f)(1) mitigating circumstance for the jury's consideration.

The trial court's error "is prejudicial unless the State can demonstrate on appeal that it was harmless beyond a reasonable doubt." *State v. Quick*, 337 N.C. 359, 363, 446 S.E.2d 535, 538 (1994). In the present case defendant's criminal history was presented to the jury, but the jury was not allowed to consider whether this history was significant under the statutory (f)(1) mitigating circumstance. "We cannot state that had this mitigating circumstance been submitted to the jury, the jury would not have found its existence." *Wilson*, 322 N.C. at 146, 367 S.E.2d at 606; *accord Quick*, 337 N.C. at 363, 446 S.E.2d at 538. "Further, we cannot conclude positively 'that had this statutory mitigating circumstance been found and balanced against the aggravating circumstances, the jury would still have returned a sentence of death.'" *Quick*, 337 N.C. at 363, 446 S.E.2d at 538 (quoting *State v. Mahaley*, 332 N.C. 583, 599, 423 S.E.2d 58, 67-68 (1992), *cert. denied*, 513 U.S. 1089, 130 L. Ed. 2d 649 (1995)). We note that the trial court submitted the nonstatutory mitigating circumstance that "[t]he defendant has no prior criminal convictions or criminal history for violent criminal behavior" and that the jury rejected this circumstance. We have previously held that the submission of this nonstatutory mitigating circumstance does not render the trial court's error harmless beyond a reasonable doubt "[b]ecause the jury was not required to give mitigating value to the nonstatutory mitigating circumstance if the jury found the circumstance's existence." *Quick*, 337 N.C. at 364, 446 S.E.2d at 538. We are unable to conclude that the failure to submit the (f)(1) mitigating circumstance was harmless beyond a reasonable doubt. Accordingly, defendant is entitled to a new capital sentencing proceeding.

We conclude that the guilt-innocence phase of defendant's trial was free from prejudicial error. However, we also conclude that the trial court during the sentencing proceeding committed reversible error by failing to submit the (f)(1) mitigating circumstance. For this reason defendant's death sentence is vacated, and this case is remanded for a new capital sentencing proceeding.

NO ERROR IN GUILT-INNOCENCE PHASE; DEATH SENTENCE VACATED; REMANDED FOR NEW CAPITAL SENTENCING PROCEEDING.