STROUD, Judge.
*587 Rashawn Mackey ("defendant") appeals from judgments entered on jury verdicts, in which the jury found him guilty of first-degree murder and discharging a firearm into an occupied vehicle. Defendant contends that the trial court violated (1) his constitutional rights to an impartial jury and a fair trial; (2) his constitutional right to presence; and (3) N.C. Gen.Stat. § 15A-1234 (2013). We hold that the trial court committed no prejudicial error.
I. Background
On or about 13 January 2012, Mr. Anderson approached two female teenagers, Ms. Lewis and her friend, at a Charlotte bus stop.[1] Lewis and her friend were going to a party. Anderson offered to drive them, and they accepted. Before Anderson dropped *384 them off, Lewis gave him her cell phone number.
On 15 January 2012, Lewis and three female teenage friends went to a party at defendant's apartment, where they met defendant and four or five other male teenagers. Ms. Jones, one of Lewis's friends, observed one of the men holding a handgun. During the party, the teenagers smoked marijuana and played a video game. After finishing work at 5:00 p.m., Anderson called Lewis to get directions to defendant's apartment so that he could pick her up. Lewis did not know the directions, so she passed her cell phone to a few of the men, who then gave Anderson directions to a dead-end road in defendant's apartment complex. Lewis overheard some of the men discussing robbing Anderson.
While it was dark outside, Lewis, Jones, and another female friend walked to the dead-end road to meet Anderson. Anderson soon arrived in his car. Lewis entered the car and sat in the passenger seat, while Jones spoke to Anderson through the driver's side window.
Defendant and two other men then approached the car, and Lewis quickly got out of the car. One of the men nudged Jones out of their way. Defendant then pointed a gun at Anderson and told him to give him his money. Anderson was frightened and did not respond. Defendant then shot Anderson in the head, killing him.
*588 On or about 30 January 2012, a grand jury indicted defendant for murder and discharging a firearm into an occupied vehicle. See N.C. Gen.Stat. §§ 14-17, -34.1 (2011). At the trial in January and February 2014, Mr. Smith, one of defendant's fellow jail inmates, testified that he and defendant had once been members of the same gang and that in January 2012, while they were in jail, defendant confessed to him that he had killed a man during a botched robbery. Smith also testified that in December 2013, defendant told him more details about the murder and gave him the names of potential witnesses whom he wanted to be persuaded to not testify. Smith testified that later that month, defendant told him to mark certain potential witnesses for execution and to threaten to mark one potential witness's mother and grandmother for execution. Smith further testified that on Sunday, 26 January 2014, defendant asked him to mark Jones for execution; Jones had begun testifying on Friday, 24 January 2014. Smith also testified that defendant had told him that two of his fellow gang members would be present in the courtroom to observe which witnesses testified. Smith finally testified that on Monday, 27 January 2014, while waiting in a holding cell at the courthouse, he overheard defendant telling a fellow gang member to mark Smith for execution, because Smith had agreed to testify against defendant.
In his own testimony, defendant denied that he had killed Anderson and testified that he was smoking a cigarette on the porch of his apartment when he heard the gunshot. Defendant also testified that he neither asked Smith to mark certain witnesses for execution nor did he speak to Smith about his case.
On 30 January 2014, during the trial, the jury sent its first note to the trial judge, in which it asked, "What is the expected length of the case at this point in time?" The trial judge did not disclose this note to defendant or his counsel, nor did it address the note on the record. In the late afternoon on Monday, 3 February 2014, the jury began its deliberations. Around 10:00 a.m. on Tuesday, 4 February 2014, the jury sent its second note to the trial judge, in which it requested the following pieces of evidence: the audio recording and transcript of a phone call between defendant and his mother, a letter written by one of defendant's fellow inmates, a transcript of defendant's interview with a police detective, and four notes which defendant gave to Smith listing the names of potential witnesses that he wanted to be intimidated or killed. The jury also requested the legal definitions of direct evidence and circumstantial evidence. The trial court disclosed this jury note to the parties and, without objection from either party, denied the jury's request for the transcript of defendant's interview with a police detective as it was *589 never tendered or received into evidence, *385 but granted the jury's remaining requests.
On 4 February 2014, during the jury's deliberations, the jury sent its third note to the trial judge.[2] The trial judge did not disclose this note to defendant or his counsel, nor did it address the note on the record. The third jury note reads as follows:
(1) Do we have any concern for our safety following the verdict? Based on previous witness gang [information] and large [number] of people in court during the trial[.]
Please do not bring this up in court[.]
(2) We need 12 letters-1 for each juror showing we have been here throughout this trial[.]
At 3:30 p.m. on Tuesday, 4 February 2014, the jury rendered its verdicts, in which it found defendant guilty of first-degree murder under the felony murder rule but not on the basis of premeditation and deliberation, and discharging a firearm into an occupied vehicle. The trial court sentenced defendant to life imprisonment without parole for the first-degree murder conviction and arrested judgment for the conviction of discharging a firearm into an occupied vehicle. Defendant gave notice of appeal in open court.
II. Standard of Review
We review alleged violations of constitutional rights de novo. State v. Ward, 226 N.C.App. 386, 387-88, 742 S.E.2d 550, 552 (2013). "Questions of statutory interpretation are questions of law, which are reviewed de novo by an appellate court." State v. Jones, --- N.C.App. ----, ----, 767 S.E.2d 341, 344 (2014), disc. review denied, - -- N.C. ----, 771 S.E.2d 304 (2015).
*590 III. Rights to an Impartial Jury and a Fair Trial
Defendant contends that the trial court's failure to question the jurors about the third jury note violated his rights to an impartial jury and a fair trial under the Sixth and Fourteenth Amendments of the U.S. Constitution and article I, sections 19 and 23 of the North Carolina Constitution. See U.S. Const. amend. VI, XIV ; N.C. Const. art. I, §§ 19, 23.
Every person charged with a crime has an absolute right to a fair trial. By this it is meant that he is entitled to a trial before an impartial judge and an unprejudiced jury in keeping with substantive and procedural due process requirements of the Fourteenth Amendment. It is the duty of both the court and the prosecuting attorney to see that this right is sustained.
State v. Williams, 362 N.C. 628, 638, 669 S.E.2d 290, 298 (2008).
[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.
Smith v. Phillips, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78, 86 (1982). "[W]hen there is a substantial reason to fear that the jury has become aware of improper and prejudicial *386 matters, the trial court must question the jury as to whether such exposure has occurred and, if so, whether the exposure was prejudicial." State v. Campbell, 340 N.C. 612, 634, 460 S.E.2d 144, 156 (1995) (brackets omitted), cert. denied, 516 U.S. 1128, 116 S.Ct. 946, 133 L.Ed.2d 871 (1996).
In Campbell, during a recess at trial, the defendant broke a window and unsuccessfully attempted to escape from the courthouse. Id. at 633, 460 S.E.2d at 155. During the incident, a bailiff and a juror were in an adjacent room. Id., 460 S.E.2d at 155. The bailiff heard the noise, looked out a window, saw some broken glass, and instructed the juror to remain inside the room. Id., 460 S.E.2d at 155. The trial court conducted *591 an individual inquiry of the juror and two other jurors to determine what they had observed and whether any of those observations could prevent them from being fair and impartial. Id. at 633-34, 460 S.E.2d at 155-56. The three jurors responded that they were aware only of a broken window and that "nothing had occurred that would impair their ability to be fair and impartial jurors." Id. at 634, 460 S.E.2d at 156. The trial court then reunited the entire jury and asked if it had made any observations that could prevent a decision based solely on the evidence, and the entire jury indicated that it could be fair and impartial. Id. at 634, 460 S.E.2d at 155-56. The North Carolina Supreme Court held that the trial court's inquiry was proper. Id. at 634, 460 S.E.2d at 156.
Similarly, in State v. Hurst, during voir dire, a prospective alternate juror stated that he had read a newspaper article concerning the defendant's trial in the jury room. 360 N.C. 181, 186-87, 624 S.E.2d 309, 315-16, cert. denied, 549 U.S. 875, 127 S.Ct. 186, 166 L.Ed.2d 131 (2006). The trial court conducted an inquiry to determine which jurors had been exposed to the article. Id. at 190, 624 S.E.2d at 317. The trial court determined that none of the deliberating jurors had been exposed to the article. Id., 624 S.E.2d at 318. The North Carolina Supreme Court held that the defendant did not suffer prejudice, because "the trial court conducted an adequate inquiry and correctly concluded that ... none of the deliberating jurors saw or read the article." Id. at 191-92, 624 S.E.2d at 318.
Defendant specifically argues that the trial court erred in failing to conduct a Campbell inquiry. But Campbell and Hurst are distinguishable. Here, the jury was not potentially exposed to any extrinsic or "improper and prejudicial matters[.]" See Campbell, 340 N.C. at 634, 460 S.E.2d at 156. The third jury note indicates that the jurors' concern for safety arose not from any extrinsic evidence but from (1) Smith's testimony that defendant was targeting certain potential witnesses to be intimidated or killed and (2) the large number of people in the courtroom. First, the jury properly considered Smith's testimony as it was admitted as evidence.[3] See U.S. v. King, 627 F.3d 641, 651 (7th Cir.2010) ("[T]he jurors' fears likely originated from the invocation of [the defendant's]
*592 membership with [a gang]. As this evidence was part of and intrinsic to the trial, there was no cause for inquiry with the jurors."). Second, the number of people in the courtroom is not an "improper and prejudicial" matter. See Campbell, 340 N.C. at 634, 460 S.E.2d at 156 ; State v. Johnson, 288 Conn. 236, 951 A.2d 1257, 1266 (2008) ("[T]he mere presence of spectators in a public courtroom and the jury's observation of them does not constitute juror misconduct or the consideration of extrinsic evidence."); U.S. v. Ford, 761 F.3d 641, 655 (6th Cir.2014) (holding that the trial court did not err in failing to question the jury when one juror expressed fear upon seeing the defendant in the courtroom, because her fear did not arise from an "extraneous influence"), cert. denied, - -- U.S. ----, 135 S.Ct. 771, 190 L.Ed.2d 640 (2014). We also note that holding otherwise would conflict with defendant's constitutional right to a public trial under the *387 Sixth and Fourteenth Amendments of the U.S. Constitution and article I, section 18 of the North Carolina Constitution. See State v. Callahan, 102 N.C.App. 344, 346, 401 S.E.2d 793, 794 (1991) ; U.S. Const. amend. VI, XIV ; N.C. Const. art. I, § 18. Because the jury's safety concern did not arise from an "improper and prejudicial" matter, we hold that the trial court did not err in failing to conduct a Campbell inquiry. See Campbell, 340 N.C. at 634, 460 S.E.2d at 156.
Relying on Holbrook v. Flynn, defendant contends that the trial court erred in failing to question the jurors about the jury note, especially given its reference to the large number of people in the courtroom. See 475 U.S. 560, 565-66, 106 S.Ct. 1340, 1344, 89 L.Ed.2d 525, 532 (1986). But Holbrook is inapposite. There, during the defendant's trial, four uniformed state troopers sat in the first row of the courtroom's spectators' section. Id. at 562, 106 S.Ct. at 1342, 89 L.Ed.2d at 530. Although the Court noted in its background discussion that the trial judge had questioned the prospective jurors about the effect of the troopers' presence, the Court did not suggest that such an inquiry was required. Id. at 565-66, 106 S.Ct. at 1344, 89 L.Ed.2d at 532. Rather, the Court addressed the issue of whether the troopers' presence "was so inherently prejudicial that [the defendant] was thereby denied his constitutional right to a fair trial." Id. at 570, 106 S.Ct. at 1346-47, 89 L.Ed.2d. at 535. The Court held that the troopers' presence did not violate the defendant's right to a fair trial. Id. at 572, 106 S.Ct. at 1347-48, 89 L.Ed.2d at 537. The issue of whether the trial judge was required to question the jury about the troopers' presence was not presented or addressed in Holbrook . We also note that the courtroom environment here was far less potentially prejudicial than the one in Holbrook . In addition, the trial judge was already well aware of the people in the courtroom as well as the testimony about defendant's statement that two of his fellow gang members would be coming to watch the proceedings; the trial judge also had the opportunity to observe the *593 jurors' reactions and demeanor during the entire trial. Accordingly, we hold that the trial court's failure to question the jury about the third jury note did not violate defendant's constitutional rights to an impartial jury and a fair trial.
IV. Right to Presence
A. Analysis
Defendant next contends that the trial court's failure to disclose the third jury note violated his right to presence under the Sixth and Fourteenth Amendments of the U.S. Constitution and article I, sections 19 and 23 of the North Carolina Constitution. See U.S. Const. amend. VI, XIV ; N.C. Const. art. I, §§ 19, 23.
Although the United State Supreme Court has stated that the confrontation clause of the federal constitution guarantees each criminal defendant the fundamental right to personal presence at all critical stages of the trial, our state constitutional right of confrontation has been interpreted as being broader in scope, guaranteeing the right of every accused to be present at every stage of his trial.
State v. Badgett, 361 N.C. 234, 248, 644 S.E.2d 206, 215, cert. denied, 552 U.S. 997, 128 S.Ct. 502, 169 L.Ed.2d 351 (2007).
The Confrontation Clause in Article I, Section 23 of the North Carolina Constitution guarantees an accused the right to be present in person at every stage of his trial. This right to be present extends to all times during the trial when anything is said or done which materially affects defendant as to the charge against him.
....
The trial court errs when it communicates with a juror in the absence of the defendant. A defendant's actual presence in the courtroom can be negated by the court's cloistered conversations with jurors or prospective jurors. Such actions may prevent the defendant from participating in the proceeding, either personally or through counsel; and they deprive the defendant of any real knowledge of what transpired.
State v. Jones, 346 N.C. 704, 708-09, 487 S.E.2d 714, 717-18 (1997) (citations and quotation marks omitted). "It is well established under North *594 Carolina law that ex parte communications between the trial court and the jury [are] prohibited." *388 Callahan, 102 N.C.App. at 346, 401 S.E.2d at 794. In Jones, the trial judge passed a note to an alternate juror without revealing its contents to the defendant or his counsel. Jones, 346 N.C. at 710, 487 S.E.2d at 718. The North Carolina Supreme Court held that "this action negated defendant's presence in the courtroom and constituted a violation of his right to be present at all stages of his capital trial." Id., 487 S.E.2d at 718. Similarly, here, the trial court did not disclose the third jury note to defendant.
The State relies on United States v. Gagnon for the proposition that "[t]he mere occurrence of an ex parte conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right." See 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486, 490 (1985) (per curiam) (brackets omitted). But Gagnon is inapposite, because our state constitutional right to presence is broader than the federal constitutional right to presence. See Badgett, 361 N.C. at 248, 644 S.E.2d at 215 ; State v. Buchanan, 330 N.C. 202, 217 n. 1, 410 S.E.2d 832, 841 n. 1 (1991) (citing the ex parte conversation in Gagnon as an example of a communication which would violate our state constitutional right to presence although it did not violate the federal constitutional right to presence). Following Jones, we hold that the trial court's failure to disclose the third jury note violated defendant's state constitutional right to presence. See Jones, 346 N.C. at 710, 487 S.E.2d at 718.
B. Prejudice
We next examine whether the trial court's error prejudiced defendant. "Once a violation of the right to be present is apparent, the State then has the burden to show that the violation was harmless beyond a reasonable doubt." Id., 487 S.E.2d at 718.
In Jones, the ex parte communication was "benign" and "did not relate in any way to defendant's trial." Id., 487 S.E.2d at 718. The North Carolina Supreme Court held that the error was harmless beyond a reasonable doubt. Id., 487 S.E.2d at 718. Similarly, in State v. Golphin, the trial court directed the clerk of court to meet privately with the jurors to provide logistical information to the jurors and to obtain the jurors' telephone numbers. 352 N.C. 364, 418, 533 S.E.2d 168, 206 (2000), cert. denied, 532 U.S. 931, 121 S.Ct. 1379, 149 L.Ed.2d 305 (2001). The North Carolina Supreme Court overruled the defendant's assignment of error, because "the clerk limited any conversation to the logistics of jury service and any other administrative matters." Id. at 419, 533 S.E.2d at 207. Similarly, in Badgett, the trial court directed the bailiff to remind the prospective *595 jurors to not discuss the case with anyone and to not read any newspaper accounts of the case. Badgett, 361 N.C. at 252-53, 644 S.E.2d at 217. The North Carolina Supreme Court held that the trial court did not commit prejudicial error, because "the communications did not relate to defendant's guilt or innocence, nor would defendant's presence have been useful to his defense." Id. at 254, 644 S.E.2d at 218 (quotation marks, brackets, and ellipsis omitted).
In contrast, in State v. Payne, the trial court gave admonitions to the jury in the jury room outside the presence of the defendant. 320 N.C. 138, 139-40, 357 S.E.2d 612, 612-13 (1987). The North Carolina Supreme Court held that the State could not show that the trial court's error was harmless beyond a reasonable doubt, because no court reporter was present during the admonitions. Id. at 140, 357 S.E.2d at 613.
Relying on Jones, Golphin, and Badgett, the State contends that the entire jury note was "administrative and non-substantive." See Jones, 346 N.C. at 710, 487 S.E.2d at 718 ; Golphin, 352 N.C. at 419, 533 S.E.2d at 207 ; Badgett, 361 N.C. at 254, 644 S.E.2d at 218. The State also points out the administrative nature of the second part of the note: "We need 12 letters-1 for each juror showing we have been here throughout this trial [.]" But the jury's safety concern partially stemmed from Smith's testimony so at least to some extent, the third jury note related to defendant's trial. Accordingly, we hold that Jones, Golphin, and Badgett are not squarely on point. See Jones, 346 N.C. at 710, 487 S.E.2d at 718 ; Golphin, 352 N.C. at 419, 533 S.E.2d at 207 ; Badgett, 361 N.C. at 254, 644 S.E.2d at 218. We also distinguish Payne given that we do have a record of the jury *389 note. See Payne, 320 N.C. at 140, 357 S.E.2d at 613.
One of the most salient facts about the jury's third note is unfortunately not provided by our record: the exact time the jury submitted the note. The trial transcript does not mention the third jury note, but the record does demonstrate that it was "not brought to the attention of the defendant or his counsel during the trial, and the trial court did not address the note[ ] on the record." The State argues that the third note was probably submitted simultaneously with the verdict or immediately thereafter, considering the content of the note, particularly the request for twelve notes to confirm the jurors' service. We do know that the third note was submitted on the last day of deliberations, and we agree that it is highly probable that the note came with the verdict and that may be why it was not mentioned in the transcript. The jury requested that the trial judge not address the third note in open court, and if it had already rendered a verdict, the trial judge may have spoken to the jurors about *596 their questions after their service was complete. But probability is not sufficient, and we cannot rule based upon speculation about what might have happened. The burden is upon the State to show that any violation of the defendant's constitutional right was harmless beyond a reasonable doubt, so we must assume for purposes of our analysis that the third note was submitted at some point prior to the completion of deliberations and at a time when the defendant could have had an opportunity to request that the trial court address the note in some manner. See Jones, 346 N.C. at 710, 487 S.E.2d at 718. We also note that the record states that the jury sent the third note "[d]uring the trial," suggesting that the jury sent the note during its deliberations.
Defendant contends that, had the trial court disclosed the third jury note, he could have renewed his objection to Smith's testimony under North Carolina Rule of Evidence 403 and moved to strike Smith's testimony. See N.C. Gen.Stat. § 8C-1, Rule 403. The State responds that the trial court would have denied such a motion, because Smith's testimony was "highly probative of defendant's guilt."
Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Id. (emphasis added).
While all evidence offered against a party involves some prejudicial effect, the fact that evidence is prejudicial does not mean that it is necessarily unfairly prejudicial. The meaning of unfair prejudice in the context of Rule 403 is an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, [on] an emotional one....
....
Generally, an attempt by a defendant to intimidate a witness to affect the witness's testimony is relevant and admissible to show the defendant's awareness of his guilt.
State v. Rainey, 198 N.C.App. 427, 433, 680 S.E.2d 760, 766 (citations and quotation marks omitted), appeal dismissed and disc. review denied, 363 N.C. 661, 686 S.E.2d 903 (2009).
Smith testified that he and defendant had once been members of the same gang and that in January 2012, while they were in jail, defendant *597 confessed to him that he had killed a man during a botched robbery. Smith also testified that in December 2013, defendant told him more details about the murder and gave him the names of potential witnesses whom he wanted to be persuaded to not testify. Smith testified that later that month, defendant told him to mark certain potential witnesses for execution and to threaten to mark one potential witness's mother and grandmother for execution. Smith further testified that on Sunday, 26 January 2014, defendant asked him to mark Jones for execution, who had begun testifying on Friday, 24 January 2014. Smith also testified that defendant had told him that two of his fellow gang members would be present in the courtroom to observe which witnesses testified. Smith finally testified that on *390 Monday, 27 January 2014, while waiting in a holding cell at the courthouse, he overheard defendant telling a fellow gang member to mark Smith for execution, because Smith had agreed to testify against defendant.
Smith's testimony is highly probative of defendant's guilt. Rainey, 198 N.C.App. at 433, 680 S.E.2d at 766 ("Generally, an attempt by a defendant to intimidate a witness to affect the witness's testimony is relevant and admissible to show the defendant's awareness of his guilt."). Smith's testimony is also highly prejudicial to defendant, but we must examine whether that prejudice is necessarily unfair in that it has a tendency to suggest a decision on an improper basis. See id., 680 S.E.2d at 766.
Defendant contends that the third note indicates that the jury was "frightened[.]" But the jury asked: "Do we have any concern for our safety following the verdict?" The jury's question indicates that the jury believed there might be a potential safety concern but wanted to know the trial judge's thoughts. We hold that the wording of the jury's question does not evince fear, but the awareness of a potential safety concern. This type of concern would probably arise in any case in which there is evidence of a murder, threats to potential witnesses, and potential gang involvement, and it is entirely reasonable for jurors to express this type of general concern.
Additionally, we examine the jury's question in context. First, the jury submitted this question as the first of two questions in its third note. The second part of the third note deals with a purely administrative matter. The jury had also submitted the second note during its deliberations which contained requests for certain pieces of evidence and certain legal definitions. The fact that the jury submitted several other requests in addition to the question at issue indicates that the jury was not prejudiced by fear. See *598 U.S. v. McAnderson, 914 F.2d 934, 943 (7th Cir.1990). In McAnderson, eight jurors sent a note to the trial judge, which included the following question: "Many of us use public transportation and walk 4-6 blocks from here to the depot. Due to the severe accusations and due to the fact that it will be getting dark earlier, is it possible to have someone take us to the depot at night?" Id. The federal appellate court observed: "The note itself does not indicate that the jury could not consider the issues before it impartially. Indeed, the question on which defendants base their objection is fourth on the list following questions about sequestration and other procedural matters. This hardly indicates a jury preoccupied with terror." Id. The federal appellate court held that the note did not indicate that the jury was prejudiced by fear. Id. Similarly, here, the context of the note does not indicate that the jury was prejudiced by fear. See id.
Second, the jury spent almost a full day in its deliberations and requested several specific pieces of evidence and certain legal definitions. The jury rendered its verdicts a few hours after receiving most of the requested evidence and instructions.[4] Additionally, the jury found defendant guilty of first-degree murder under the felony murder rule but not on the basis of premeditation and deliberation. The jury's attention to detail in its deliberations and verdicts indicates that it was not prejudiced by fear. See State v. Newson, --- N.C.App. ----, ----, 767 S.E.2d 913, 920 n. 1 (2015) (noting that the fact that "the jury asked to review, and did review, specific pieces of evidence before rendering its verdict" suggests a lack of juror prejudice); U.S. v. Paccione, 749 F.Supp. 476, 478 (S.D.N.Y.1990) ( "[I]t should be noted that the care and attention to detail exhibited by the jury both in the deliberation process and in the verdict itself contradicts any suggestion that the jury's judgment was affected by fear of the defendants.").
In summary, viewing the third jury note in context demonstrates that Smith's testimony did not suggest decision on an improper, emotional basis, and the jury in fact did not make its decision on an improper, emotional basis. See Rainey, 198 N.C.App. at 433, 680 S.E.2d at 766. While Smith's testimony was *391 certainly prejudicial to defendant, the danger of unfair prejudice did not substantially outweigh its probative value. See id., 680 S.E.2d at 766 ; N.C. Gen.Stat. § 8C-1, Rule 403. Accordingly, we hold that, had the trial court disclosed the jury note to defendant and had defendant renewed his objection under Rule 403, the trial court would *599 not have had any reason to change its ruling admitting Smith's testimony. Because the trial court would have overruled defendant's objection, the trial court also would have denied a motion to strike Smith's testimony.
Defendant also contends that, had the trial court disclosed the jury note, he could have requested that the trial court (1) conduct individual voir dire of the jury "to find which jurors in particular feared for their safety and the extent to which that fear influenced their deliberations"; (2) instruct the jury that "there was no evidence that [defendant] or any courtroom spectator intended to harm the jurors"; (3) instruct the jury to not consider the number of people in the courtroom for any purpose; and (4) instruct the jury "to set aside [its] fears, and that [it was] not to permit [its] fears to influence [its] evaluation of [defendant's] credibility or of his case." But as discussed above, the record indicates that Smith's testimony did not cause the jury to base its decision on fear or any other improper basis, and the jury in fact did not make its decision on an improper, emotional basis. Nor did the jury consider any improper extrinsic information. Accordingly, had defendant made these requests, the trial court could have properly denied all of them. See U.S. v. Thornton, 1 F.3d 149, 155-56 (3rd Cir.1993) (holding that a trial judge "is usually well-aware of the ambience surrounding a criminal trial and the potential for juror apprehensions" and that in determining whether to question jurors about their safety concern, a trial judge is in a much better position than an appellate court to balance the probable harm resulting from the emphasis such action would place upon the jurors' safety concern against any potential prejudice resulting from the jurors' safety concern), cert. denied, 510 U.S. 982, 114 S.Ct. 483, 126 L.Ed.2d 433 (1993). Similarly, had defendant made a motion for a mistrial, the trial court would not have erred in denying it. We therefore hold that the State has shown that the trial court's failure to disclose the jury note was harmless beyond a reasonable doubt. See Jones, 346 N.C. at 710, 487 S.E.2d at 718.
V. Statutory Violation
Defendant next contends that the trial court violated N.C. Gen. Stat. § 15A1234. Defendant specifically asserts that this statute requires a trial court (1) to disclose every jury note to a defendant and to hear the defendant in connection with every note; and (2) to respond to every jury note in open court. N.C. Gen. Stat. § 15A1234 provides:
(a) After the jury retires for deliberation, the judge may give appropriate additional instructions to:
(1) Respond to an inquiry of the jury made in open court; or *600 (2) Correct or withdraw an erroneous instruction; or
(3) Clarify an ambiguous instruction; or
(4) Instruct the jury on a point of law which should have been covered in the original instructions.
(b) At any time the judge gives additional instructions, he may also give or repeat other instructions to avoid giving undue prominence to the additional instructions.
(c) Before the judge gives additional instructions, he must inform the parties generally of the instructions he intends to give and afford them an opportunity to be heard.
The parties upon request must be permitted additional argument to the jury if the additional instructions change, by restriction or enlargement, the permissible verdicts of the jury. Otherwise, the allowance of additional argument is within the discretion of the judge.
(d) All additional instructions must be given in open court and must be made a part of the record.
N.C. Gen.Stat. § 15A-1234 (emphasis added). "Whether or not to give additional instructions rests within the sound discretion of the trial court and will not be overturned absent abuse of that discretion."
*392 State v. Bartlett, 153 N.C.App. 680, 685, 571 S.E.2d 28, 31 (2002), appeal dismissed and disc. review denied, 356 N.C. 679, 577 S.E.2d 892 (2003). "[T]he trial court is in the best position to determine whether further additional instruction will aid or confuse the jury in its deliberations, or if further instruction will prevent or cause in itself an undue emphasis being placed on a particular portion of the court's instructions." State v. Prevette, 317 N.C. 148, 164, 345 S.E.2d 159, 169 (1986).
As noted above, defendant argues that this statute requires a trial court (1) to disclose every jury note to a defendant and to hear the defendant in connection with every note and (2) to respond to every jury note in open court. Although we would agree that because of a defendant's right to presence under article I, section 23 of the North Carolina Constitution, the trial court should disclose every jury note to a defendant, as discussed above, N.C. Gen.Stat. § 15A-1234 does not direct this disclosure. See N.C. Gen.Stat. § 15A-1234. This statute addresses the circumstances when a trial judge may give additional instructions to the jury after it has retired for deliberations; one of those circumstances is to "[r]espond to an inquiry of the jury made in open court[.]"
*601 Id. § 15A-1234(a)(1). But nothing in this statute requires a trial judge to respond to a jury note in a particular way. See State v. Davis, 167 N.C.App. 770, 773, 607 S.E.2d 5, 8 (2005) ("This statute does not prevent the judge from responding in open court to a written question from the jury." (emphasis added) (discussing N.C. Gen.Stat. § 15A-1234 )).
Defendant relies on State v. King, 342 N.C. 357, 365, 464 S.E.2d 288, 293 (1995). But King is inapposite. There, the defendant contended that the trial court erred in instructing the jury that any request or question must be "of the jury, not of a juror." Id. at 363, 464 S.E.2d at 293. The defendant argued that "the jurors would have understood this instruction to [mistakenly] mean that no questions could be asked of the court absent a consensus among the twelve jurors that the question should be asked." Id., 464 S.E.2d at 293. The North Carolina Supreme Court agreed with the defendant and held:
[ N.C. Gen.Stat. § 15A-1234(a)(1) ] does not mandate that all twelve jurors agree that a question be asked before it can be brought before the court. Rather, this statute merely requires that all communications between the court and the jury be conducted in open court with all members of the jury present.
Id. at 365, 464 S.E.2d at 293. But the Court did not hold that N.C. Gen. Stat. § 15A1234 requires a trial judge to respond to a jury note or to disclose a jury note to which he does not respond. See id., 464 S.E.2d at 293.
Defendant also relies on State v. Ashe, 314 N.C. 28, 33-34, 331 S.E.2d 652, 656 (1985). But Ashe is also inapposite, as the Court there discussed N.C. Gen.Stat. § 15A-1233(a), not N.C. Gen.Stat. § 15A-1234. Id., 331 S.E.2d at 656. We note that N.C. Gen.Stat. § 15A-1233(a) is inapplicable here, because, in the jury note at issue, the jury did not "request[ ] a review of certain testimony or other evidence[.]" See N.C. Gen.Stat. § 15A-1233(a) (2013). Accordingly, we hold that the trial court did not violate N.C. Gen.Stat. § 15A-1234.
VI. Conclusion
For the foregoing reasons, we hold that the trial court did not commit prejudicial error.
NO ERROR.
Judges DILLON and DAVIS concur.

Names have been changed to protect the identity of the witnesses and the victim.

The State contends that the record is silent on whether the trial judge received this note, whether the jury sent this note before the verdict, and whether defendant was aware of this note at the time. But the record includes a narrative pursuant to North Carolina Rule of Appellate Procedure 9(c), which states: "During the trial, the jury sent out three notes to the court that were ultimately filed with the Superior Court Clerk and that appear in the Record on Appeal. Two of those notes-the first beginning, 'What is the expected length ...' (dated January 30, 2014; page 200 of the record), and the second beginning, 'Do we have any concern for our safety ...' (dated February 4, 2014; page 202 of the record)-were not brought to the attention of the defendant or his counsel during the trial, and the trial court did not address the notes on the record." N.C.R.App. P. 9(c). We note that the record unfortunately does not provide the exact time that the jury submitted this note.

On appeal, defendant does not challenge the trial court's decision to admit Smith's testimony, although he did object to this evidence at trial and his objection was overruled. But in addressing the issue of prejudice, defendant does contend that, had the trial judge informed defendant of the jury note, he could have renewed his objection to Smith's testimony under North Carolina Rule of Evidence 403 and moved to strike Smith's testimony. See N.C. Gen.Stat. § 8C-1, Rule 403 (2013). We address this argument below in our discussion on prejudice.

The trial court did not allow the jury to consider the transcript of defendant's interview with a police detective, which was requested in the second jury note, as it was never tendered or received into evidence.